## IWATA v. WESTERN FRUIT GROWERS, Inc.

### No. 7683.

Circuit Court of Appeals, Ninth Circuit.

June 14, 1937.

Rehearing Denied July 19, 1937.

Edward Brody, of Los Angeles, Cal., for appellant.

G. V. Weikert, of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This action was brought by appellant to recover of appellee the sum of $2,826.85, being the alleged purchase price of ten carloads of melons alleged to have been sold by appellant to appellee, with interest thereon, and the further sum of $500 as attorney's fees. Appellee demurred to appellant's complaint on the ground that the District Court had no jurisdiction of the case. The demurrer was overruled. Appellee answered, denying that it had purchased any melons of appellant, or that it owed appellant anything. The case was tried by the court, without a jury, trial by jury having been expressly waived. Appellee, at the beginning of the trial, objected to the introduction of any evidence, on the ground that the District Court had no jurisdiction of the case. The objection was overruled. At the conclusion of appellant's evidence, appellee moved for a nonsuit. The court granted appellee's motion and thereupon entered a judgment of dismissal. This appeal followed.

Did the District Court have jurisdiction of this case? The complaint alleges that the action is brought under and by virtue of the provisions of the Perishable Agricultural Commodities Act of June 10, 1930, c. 436, 46 Stat. 531-538 (7 U.S.C.A. §§ 499a-499r),[1] and that "the jurisdiction of [the District] Court arises by reason of the fact that this action is brought under the provisions of said Act." No other ground of jurisdiction is asserted.[2] Hence the question to be decided is whether the cause of action, if any, stated in appellant's complaint arises under the Perishable Agricultural Commodities Act.

Section 1 of the act (46 Stat. 531, 7 U.S.C.A. § 499a) defines some of the terms therein used, including the terms "commission merchant," "dealer," and "broker."[3]

Section 2 (46 Stat. 532, 7 U.S.C.A. § 499b) provides: "It shall be unlawful in or in connection with any transaction in interstate or foreign commerce—

"(1) For any commission merchant or broker to make any fraudulent charge in respect of any perishable agricultural commodity received in interstate or foreign commerce;

"(2) For any dealer to reject or fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity bought or sold or contracted to be bought or sold in interstate or foreign commerce by such dealer;

"(3) For any commission merchant to discard, dump, or destroy without reasonable cause any perishable agricultural commodity received by such commission merchant in interstate or foreign commerce;

"(4) For any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement concerning the condition, quality, quantity, or disposition of, or the condition of the market for, any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant, or bought or sold or contracted to be bought or sold in such commerce by such dealer; or the purchase or sale of which in such commerce is negotiated by such broker; or to fail or refuse truly and correctly to account promptly in re-

[1] This act was amended by the Acts of April 13, 1934, c. 120, 48 Stat. 584, and June 19, 1936, c. 602, 49 Stat. 1533, but the amendments were subsequent to the transaction here complained of.

[2] Diverse citizenship is not alleged, nor is it claimed that the action arises under the Constitution, a treaty, or any law of the United States other than the Perishable Agricultural Commodities Act.

[3] Subdivisions (5), (6), and (7) of section 1:

"(5) The term 'commission merchant' means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another;

"(6) The term 'dealer' means any person engaged in the business of buying or selling in carloads any perishable agricultural commodity in interstate or foreign commerce, except that (A) no producer shall be considered as a 'dealer' in respect of sales of any such commodity of his own raising; and (B) no person buying any such commodity solely for sale at retail shall be considered as a 'dealer' in respect of any such commodity in any calendar year until his purchases of such commodity in carloads in such year are in excess of twenty. . . .

"(7) The term 'broker' means any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser, respectively."

spect of any such transaction in any such commodity to the person with whom such transaction is had;

"(5) For any commission merchant, dealer, or broker, for a fraudulent purpose, to represent by word, act, or deed that any perishable agricultural commodity received in interstate or foreign commerce was produced in a State or in a country other than the State or the country in which such commodity was actually produced;

"(6) For any commission merchant, dealer, or broker, for a fraudulent purpose, to remove, alter, or tamper with any card, stencil, stamp, tag, or other notice, placed upon any container or railroad car containing any perishable agricultural commodity, if such card, stencil, stamp, tag, or other notice contains a certificate under authority of any Federal or State inspector as to the grade or quality of the commodity contained in such container or railroad car or the State or country in which such commodity was produced."

This section, it will be noted, applies only to commission merchants, dealers, and brokers and to them only in, or in connection with, transactions in interstate or foreign commerce.

Section 5 (7 U.S.C.A. § 499e) provides that, "If any commission merchant, dealer, or broker violates any provision of paragraph (1), (2), (3), or (4) of section 2 [section 499b of this chapter] he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation," and that "Such liability may be enforced either (1) by complaint to the Secretary [of Agriculture] as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this Act [chapter] are in addition to such remedies." Section 5 creates no liability and provides no remedy except for violations of section 2.

Section 6 (46 Stat. 534, 7 U.S.C.A. § 499f) provides for the filing of complaints with the Secretary charging violations of section 2, for the service of such complaints on such violators, and for the investigation, hearing, and determination thereof by the Secretary. Section 7 (46 Stat. 534, 7 U.S.C.A. § 499g) provides that if, after hearing, the Secretary determines that there has been a violation of any provision of paragraph (1), (2), (3), or (4) of section 2, he shall, unless the offender has already made reparation to the person complaining, determine the amount of damage, if any, to which such person is entitled as a result of such violation, and shall make an order directing payment thereof on or before a date to be fixed in the order. These provisions apply only to complaints which charge violations of section 2, and which seek enforcement of the liability created by section 5. In the absence of such a complaint, the Secretary has no power or authority to make any reparation order.

Section 7 further provides: "If any commission merchant, dealer, or broker does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may within one year of the date of the order file in the district court of the United States for the district in which he resides or in which is located the principal place of business of the commission merchant, dealer, or broker, or in any State court having general jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages and the order of the Secretary in the premises. Such suit in the district court shall proceed in all respects like other civil suits for damages except that the findings and orders of the Secretary shall be prima facie evidence of the facts therein stated, and the petitioner shall not be liable for costs in the district court nor for costs at any subsequent state of the proceedings unless they accrue upon his appeal. If the petitioner finally prevails, he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit."

Section 7 provides no remedy and confers no jurisdiction on the District Court except for enforcement of the liability created by section 5, which, as previously noted, creates no liability except for violations of section 2. Sections 5 and 7 are the only sections or provisions of the act conferring or purporting to confer any jurisdiction on the District Court.

By section 15 (7 U.S.C.A. § 499o) the Secretary of Agriculture was authorized to make such regulations as might be necessary to carry out the provisions of the act. Regulations for that purpose were made and published by the Secretary on October

578

4, 1930.[4] Section 3 of Regulation 1 defines certain terms used but not defined in the act, including the terms "truly and correctly to account" and "account promptly."[5]

■ The complaint in this action alleges that on July 7, 1931, appellee "through its duly authorized agent, the Produce Distributors, Ltd., and/or Edward S. Garguilo," purchased from appellant ten carloads of melons, a perishable agricultural commodity, for $2,826.85, but it does not allege that appellee was a commission merchant, dealer, or broker, or that it acted as such in making this purchase. It may have been and was, for all we know, the ultimate purchaser.

■ The complaint alleges that the melons so purchased were shipped from Brawley, Cal., by appellant to appellee, and were "diverted" by appellee to Jerome Distributing Company of New York, but it does not state to what place the melons were shipped, or from what place or to what place they were diverted. There is nothing to indicate that they ever left California. The fact that Jerome Distributing Company is "of" New York has no significance. It may have received the melons in California. It is not alleged, nor can it be inferred from anything stated in the complaint, that the transaction between appellant and appellee was a transaction in interstate or foreign commerce.

■ The complaint alleges that on July 8, 1931, after receipt of the melons, appellee gave its check for $2,976.85 to the Produce Distributors, Limited, which, after depositing said check in a bank, issued its own check to appellant for $2,826.85; that the bank applied the proceeds of appellee's check to a note of Produce Distributors, Limited, which the bank held, and

later, because of insufficiency of funds remaining to the credit of Produce Distributors, Limited, refused to honor the check which Produce Distributors, Limited, had issued to appellant, and that no part of the $2,826.85 has been paid to appellant, but it does not allege that appellee has failed or refused "truly and correctly to account promptly" to appellant in respect of the transaction referred to. Appellee is charged only with nonpayment, which, alone, does not constitute failure or refusal "truly and correctly to account," within the meaning of the act. See paragraphs 9 and 10 of section 3 of Regulation 1, supra.

■ The complaint alleges that on December 29, 1931, appellant filed with the Department of Agriculture a complaint against appellee, "setting forth the above facts," and that, after hearing said complaint, the Secretary of Agriculture made a reparation order directing appellee to pay to appellant the sum of $2,826.85, but it does not allege that the complaint filed with the Department stated any fact other than those stated in the complaint in this action. Since the complaint in this action does not allege that appellee was a commission merchant, dealer, or broker, or that the transaction between appellant and appellee was a transaction in interstate or foreign commerce, or that appellee has failed or refused truly and correctly to account promptly to appellant in respect of that transaction, or that appellee has in any other respect violated section 2 of the Perishable Agricultural Commodities Act, we must and do assume that the complaint filed with the Department was equally defective, and that no valid reparation order was or could be predicated thereon.

4 After the amendment of April 13, 1934 (see footnote 1), new regulations were made, but we are here concerned only with those of October 4, 1930.

5 Paragraphs 9 and 10 of section 3 of Regulation 1:

"*Par. 9. Truly and correctly to account.* —This term shall be deemed to include the prompt rendering of a true and correct itemized statement of the sale or other disposition of any consignment of perishable agricultural commodities in interstate or foreign commerce, with full payment of the gross amount for which each such perishable agricultural commodity is sold, less the proper, usual, or agreed selling charges, with all other

expenses necessarily and actually incurred or agreed to in the handling thereof.

"*Par. 10. Accounting promptly.*—This term means that full accounting and payment of the net proceeds in cash or its equivalent shall be effected within 10 days after the day on which the final sale of any consigned lot of produce shall have been made, unless otherwise provided by agreement between the parties. Provided that in the case of a sale on commission at shipping point or of a shipment diverted while in transit or diverted from one terminal market to another, the 10-day period shall be computed from the time of arrival of the shipment at destination."

The cause of action, if any, stated in the complaint does not arise under the Perishable Agricultural Commodities Act. The District Court, therefore, had no jurisdiction of this case.

Judgment reversed and case remanded, with directions to dismiss it for want of jurisdiction; costs of appeal to be paid by appellant.