## CONSOLIDATED CITRUS COMPANY

v.

### Lewis D. GOLDSTEIN.

### Civ. A. No. 29837.

United States District Court
E. D. Pennsylvania.

March 14, 1963.

Ned Stein, Philadelphia, Pa., for plaintiff.

Waldron & Weitzman, by Malcolm H. Waldron, Jr., Philadelphia, Pa., for defendant.

WOOD, District Judge.

This is a civil action brought under the provisions of the Perishable Agricultural Commodities Act of 1930 and its Supplements, 7 U.S.C.A. § 499g(b)[1] to recover a reparation award rendered by the Secretary of Agriculture on September 29, 1960, in the sum of $4,514.73.

Any further reference to the above-named statute will simply be to the "Act."

The defendant questions the authority of this Court to consider this matter, and he argues that we lack jurisdiction under the Act. Essentially, this case concerns two sales of oranges by the plaintiff to the defendant which were shipped by truck from Florida to Philadelphia.

At the very outset, the defendant claimed the Complaint was defective because it did not contain any allegation

1. "If any commission merchant, dealer, or broker does not pay the reparation award within the time specified in the Secretary's order, the complainant, or any person for whose benefit such order was made, may within three years of the date of the order file in the district court of the United States for the district in which he resides or in which is located the principal place of business of the commission merchant, dealer, or broker, or in any State court having general jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages and the order of the Secretary in the premises. The orders, writs, and processes of the district courts may in these cases run, be served, and be returnable any where in the United States. Such suit in the district court shall proceed in all respects like other civil suits for damages, except that the findings and orders of the Secretary shall be prima-facie evidence of the facts therein stated, and the petitioner shall not be liable for costs in the district court, nor for costs at any subsequent state of the proceedings, unless they accrue upon his appeal. If the petitioner finally prevails, he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit;" 7 U.S.C.A. § 499g(b).

that the defendant was a commission merchant,[2] dealer[3] or broker.[4] In support of his position, defendant cites Iwata v. Western Fruit Growers, Inc., 90 F.2d 575 (9 Cir., 1937), which dismissed a similar Complaint because it lacked an allegation that the defendant was a commission merchant, dealer or broker. We are not bound to follow this case, but, in any event, it is distinguishable from the instant matter for several reasons. The Complaint in Iwata also failed to allege diversity of citizenship and interstate commerce. These two allegations are contained in the Complaint at bar. Furthermore, the Iwata case was decided *before* the present Federal Rules of Civil Procedure became effective on September 1, 1938.

The Federal Rules of Civil Procedure, 28 U.S.C.A., apply to the proceeding, Hamilton Bros., Inc. v. Hazzouri, 104 F.Supp. 659 (M.D.Pa.1952) and the Act *provides* that the proceeding "shall proceed in all respects like other civil suits for damages." 7 U.S.C.A. § 499g(b).

Federal Rules of Civil Procedure should be liberally construed in order to bring about a fair and impartial administration of justice. American Fruit Growers, Inc. v. S. T. Runzo & Co., 95 F.Supp. 842 (W.D.Pa.1951).

Rule 8(a) (1) of Fed.R.Civ.P. simply requires, "a short and plain statement of the grounds upon which the court's jurisdiction depends." Where jurisdiction is founded on the existence of a question arising under a particular statute, Official Form 2(c) is suggested by the Advisory Committee. Rule 84, Fed.R. Civ.P., and see Appendix of Forms, 28 U.S.C.A. This form is as follows:

"The action arises under the Act of ...., .... Stat. ....; U.S.C., Title ...., § ...., as hereinafter more fully appears."

An examination of the plaintiff's complaint discloses that paragraphs 1 and 2 aver the diversity of citizenship of the parties. Then paragraph 3 states:

"3. This action is commenced in accordance with the provisions of the Perishable Agricultural Commodities Act of 1930 and its Supplements (46 Stat. 531; 7 U.S.C.A. 499 [a] et seq.) Section 7(b)."

Plaintiff's Complaint sufficiently satisfies one requisite of Form 2(c). Then, an additional factual statement must follow the pleaded Act which bears out a

2. Section 1 of the Act (46 Stat. 531, 7 U.S.C.A. § 499a) defines some of the terms therein used, including the terms "commission merchant," "dealer," and "broker."
"The term 'commission merchant' means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another;" § 499a (5)

3. "The term 'dealer' means any person engaged in the business of buying or selling in carloads any perishable agricultural commodity in interstate or foreign commerce, except that (A) no producer shall be considered as a 'dealer' in respect of sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at retail shall be considered as a 'dealer' in respect of any such commodity in any calendar year until his purchases of such commodity in carloads in such year are in excess of twenty; and (C) no person buying any

such commodity for canning and/or processing within the State where grown shall be considered a 'dealer' whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph 4 of this section. Any person not considered as a 'dealer' under clauses (A), (B), and (C) may elect to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a 'dealer.' As used in this paragraph, the term 'in carloads' includes wholesale or jobbing quantities as defined for any such commodity by the Secretary;" § 499a (6).

4. "The term 'broker' means any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser, respectively," § 499a (7).

claim within the jurisdiction of the Court.

■ The Act, at § 499g(b), states as follows, regarding the facts to be pleaded when suit on a reparation order is filed in the District Court:

"* * * a petition setting forth briefly the causes for which he claims damages and the order of the Secretary in the premises."

And further, § 499g(b) states, "the findings and orders of the Secretary shall be prima-facie evidence of the facts therein stated, * * *."[5]

Paragraphs 4 and 5 of the Complaint allege sales by the plaintiff of two truckloads of oranges f. o. b. Eustis, Florida, to the defendant on November 8th and 14th, 1958, respectively,

"* * * which oranges were delivered and received and accepted and for which the defendant became liable to the plaintiff * * *."

In paragraph 8 of the Complaint, plaintiff incorporated the findings of the Secretary as part of its pleading and attached a copy thereof as an exhibit. Krueger v. Acme Fruit Co., 75 F.2d 67 (5 Cir., 1935).

The Secretary's findings of fact, numbers 7 and 13, found that these oranges arrived in Philadelphia on November 12th and 18th, 1958.

All of the Secretary's findings and order were offered into evidence by the plaintiff at the trial and so admitted by the Court.

■ This establishes that interstate commerce was utilized since we have shipments of these oranges from Florida to Pennsylvania. The purchase of a commodity for shipment from one state to another is as much a part of interstate commerce as the transportation or sale at destination. Krueger v. Acme Fruit Co., supra.

■ In the absence of proof to the contrary, since the original complaint before the Secretary was not introduced in evidence, the Court must assume that the Secretary would not have acted had he lacked jurisdiction. Barker-Miller Distributing Co. v. Berman, 8 F.Supp. 60 (W.D.N.Y.1934).

Therefore, this Court has jurisdiction of the parties and the subject matter by reason of the Act, interstate commerce and the diversity of the parties.

■ The fact that there is no identification of the defendant as a commission merchant, dealer or broker is not fatal to this action. The acts of the defendant as alleged in the Complaint fall within the definitions of commission merchant, dealer and broker as contained in the Act. (See notes 3 and 4, supra.)

■ Further objection to our jurisdiction is made by the defendant because he was not *licensed* under the Act. The Secretary found[6] and we so find that the acts performed by the defendant were *subject to license*.

It seems that the defendant had been licensed under the Act until 1955 when his license was revoked. To accept the defendant's argument would lead to an absurd result because it would ignore the obvious purpose of the Act.

"The purpose of the Perishable Agricultural Commodities Act is to suppress unfair and fraudulent practices in the marketing of fresh fruits and fresh vegetables, whether frozen or packed in ice, and including cherries in brine, *in interstate or foreign commerce.* * * *

"The procedure to be followed by *persons subject to license* and by the Department in enforcing the Act is described in the regulations promulgated by the Secretary."[7] (Emphasis supplied.)

---

5. Thus the Act creates a rebuttable presumption that these are established facts until sufficient evidence is introduced at trial to rebut them. Spano v. Western Fruit Growers, 83 F.2d 150 (10 Cir., 1936).

6. Finding of Fact number 2 as contained in Exhibit "A" attached to the Complaint.

7. See Service and Regulatory Announcement No. 121, United States Department of Agriculture.

Clearly the Act was intended to regulate all persons who operate in the business of dealing with perishable agricultural commodities in interstate commerce. The existence of a license is not a condition precedent to regulation by the Secretary of Agriculture.

After a consideration of all the testimony, exhibits, briefs of counsel and oral argument, we make the following Findings of Fact, Conclusions of Law and Order:

## FINDINGS OF FACT

1. Plaintiff, Consolidated Citrus Company, is a corporation located in Eustis, Florida.

2. The defendant, Lewis D. Goldstein, located in Philadelphia, Pennsylvania, at the time of the said transaction was not licensed under the Perishable Agricultural Commodities Act of 1930.

3. On or about November 8, 1958, in the course of interstate commerce, plaintiff sold to Lewis D. Goldstein one truckload of U. S. No. 1 early oranges, color added, in ⅘ bushel boxes, sizes 175 to 252 at the then existing market prices, f.o.b., Eustis, Florida, said oranges to be shipped by truck to J. & I. Honigman, 16 Spruce Street, Philadelphia, Pennsylvania. The plaintiff was to prepay the freight charges and collect them from the defendant. (Manifest, Ex. P–3)

4. On November 8, 1959, the plaintiff shipped to J. & I. Honigman, namely, one truckload of oranges, consisting of 175 boxes of size 175, 224 boxes of size 216, and 401 boxes of size 252.

5. Upon complaint being made by Goldstein, the prices were adjusted as follows: size 175, $2.975; size 216, $2.85; size 252, $2.725, and making a total of $2,611.75 plus freight prepaid of $340.00.

6. The aforesaid shipment arrived at 16 Spruce Street, Philadelphia, Pennsylvania, where it was received and accepted by J. & I. Honigman, and the said J. & I. Honigman sent its check for $2,-492.13 to the defendant, which he deposited in his own account. (Ex. P–6)

7. On November 19, 1958, the defendant forwarded the check of Harry I. Lebo for the sum of $2,492.13 on which payment had been stopped. (Ex. P–4)

8. The agreed purchase price for the aforesaid truckload by reason of adjustment was $2,591.75, including the freight prepaid by the plaintiff, less an advance to the trucker by Lewis D. Goldstein of $16.00, leaving an unpaid balance due by Lewis D. Goldstein to the plaintiff of $2,-575.75.

9. On November 14, 1958, in the course of interstate commerce, plaintiff sold to Lewis D. Goldstein one truckload of early oranges, color added, in ⅘ bushel boxes, sizes 150 to 252, at the then existing market price, f.o.b., Eustis, Florida. The said truckload was to be shipped to J. & I. Honigman, 16 Spruce Street, Philadelphia, Pennsylvania, and the plaintiff would prepay the freight charges and collect them from the defendant. (Manifest, Ex. P–3)

10. On November 14, 1958, plaintiff shipped to J. & I. Honigman, one truckload of oranges consisting of 9 boxes size 150, 198 boxes size 175, 221 boxes size 216, and 322 boxes size 252.

11. The aforesaid shipment arrived at 16 Spruce Street, Philadelphia, Pennsylvania, where it was received and accepted by J. & I. Honigman, who then sold the oranges and sent Lewis D. Goldstein a check in the sum of $1,372.25 (Ex. P–7). This check was endorsed and deposited in the account of Harry I. Lebo. On December 8, 1958, Goldstein sent Harry I. Lebo's check in the amount of $1,797.05 to the plaintiff, on which check payment had been stopped. (Ex. P–5)

12. The prevailing market price of the second truckload of oranges was $1,-633.93, plus freight charges of $317.05, less $12.00 advanced by Goldstein to the trucker, leaving an unpaid balance due of $1,938.98.

13. Lewis D. Goldstein, the defendant, not having a license, utilized the li-

cense of Harry I. Lebo for his operations. (Ex. P–8, 9, 10, 11, 12)

14. At the time of the said transactions, Harry I. Lebo was no longer associated with the defendant, Lewis D. Goldstein, and the said Lewis D. Goldstein utilized the name of Harry I. Lebo and the bank account in the name of Harry I. Lebo for his own personal use and benefit. (Ex. P–4, 5)

15. The complaint filed by the plaintiff against the defendant before the Secretary of Agriculture was filed within the statutory period of nine months after the causes of action accrued.

16. The findings and order of the Secretary are incorporated into this complaint by paragraph 8 thereof and attached thereto as Exhibit "A".

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter.

2. Venue is properly in this District.

3. Lewis D. Goldstein, the defendant, was engaged as a commission merchant, dealer or broker in the fresh fruit business at the time of the transactions, and was subject to be licensed under the Perishable Agricultural Commodities Act. (Ex. P–1)

4. Lewis D. Goldstein, the defendant, failed to comply with the order of the Secretary, dated September 29, 1960.

5. The Court concurs in the findings and order of the Secretary of Agriculture.

6. The defendant is liable to the plaintiff in the sum of $4,514.73, with interest at five percent from December 1, 1958.

7. Plaintiff's counsel is entitled to a reasonable attorney fee of $1,500.00 under the Act, § 499g(b).

## ORDER

AND NOW, this 14th day of March, 1963, judgment is entered in favor of the plaintiff, Consolidated Citrus Company, in the sum of $4,514.73, with interest at the rate of five percent per annum, from December 1, 1958 until paid, and judgment is further entered in favor of the plaintiff for a reasonable attorney fee of $1,500.00, to be taxed and collected as part of the costs of the suit.