**In re The ITALIAN OVEN, INC., Debtor.**

**MONTEVERDE'S INC., Movant,**

v.

**The ITALIAN OVEN, INC., Respondent.**

**Bankruptcy No. 96–25512–JKF.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 24, 1997.

Mark E. Freedlander, Pittsburgh, PA, for Debtor in Possession.

Thomas J. Dempsey, Jr., Pittsburgh, PA, for Monteverde's Inc.

Mark L. Glosser, Pittsburgh, PA, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is the motion for relief from the automatic stay filed on behalf of Monteverde's, Inc., a supplier of perishable agricultural commodities, including fresh and prepackaged fruits and vegetables. During calendar year 1996, Monteverde's sold and delivered in excess of $354,693 worth of fruits and vegetables to restaurants owned or operated by Debtor, the Italian Oven, Inc. Debtor is a Pennsylvania corporation that operated 19 restaurants and franchised 70 others in the United States and Australia.[2] Debtor filed its petition for relief under chapter 11 on October 21, 1996. On that date, Debtor owed Monteverde's $23,820.22.

Monteverde's claims that Debtor is subject to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* (PACA). If applicable to this case, PACA imposes a trust on the fruits and vegetables delivered to, but not paid for by, Debtor and the proceeds and

---

1. The court's jurisdiction is not at issue.

2. This motion does not involve the franchises. Only transactions between Monteverde's and the restaurants owned and operated by Debtor are at issue.

resulting products of the purchases.[3] Monteverde's seeks relief from stay to pursue collection of its unpaid balance in the district court, one of the fora available in which to litigate PACA claims.[4]

Debtor and the Official Committee of Unsecured Creditors contend that PACA does not apply to restaurants. Debtor claims that it is a consumer of the perishable products, not a dealer, broker or retailer within the meaning of the Act, and that Monteverde's holds a general unsecured claim that does not form a basis on which to grant relief from stay.

The parties have engaged in discovery, stipulated to the material facts, and briefed and argued their positions. This Memorandum Opinion and Order constitute the court's findings of fact and conclusions of law.

## DISCUSSION

PACA was enacted in 1930 to regulate the sale of perishable agricultural commodities. *See* 7 U.S.C. § 499a(b)(4). The House Report accompanying the 1984 amendments noted that PACA's purposes are to encourage fair trading practices in marketing perishables, to suppress unfair and fraudulent business practices in marketing, and to provide for the collection of damages from buyers and sellers who fail to honor their contractual obligations. H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. The statute requires entities that qualify as commission merchants, dealers and brokers in perishable agricultural commodities to obtain a license through the Secretary of Agriculture ("Secretary"), 7 U.S.C. § 499c(a), and establishes enforcement mechanisms through complaints filed with the Secretary or with any court of competent jurisdiction. *Id.* at § 499e(b).

Since its enactment, PACA has been broadened to impress a trust in favor of

sellers of perishable agricultural commodities on the inventories of commodities, the products derived therefrom, and the proceeds of sale of those commodities and products. *Id.* at § 499e(c)(2). The Regulations promulgated by the Secretary explain that trust assets are preserved in a "nonsegregated 'floating' trust" and that commingling of trust assets is contemplated. 7 C.F.R. § 46.46(c). The trust vehicle provides sellers of the commodities with a means of recovery for unpaid purchases that is superior to all other creditors, including secured creditors, provided that the seller gives written notice of intent to preserve the benefits of the trust to the purchaser. 7 U.S.C. § 499e(c)(3), (4); 7 C.F.R. § 46.46(g)(1). *See, In re H.R. Hindle & Co., Inc.,* 149 B.R. 775, 785 (Bankr.E.D.Pa. 1993).

■ To prove a PACA claim, the seller must show that the purchaser of the perishable agricultural commodities fits within the Act's definition of commission merchant, dealer or broker. In this case, Monteverde's contends that Debtor falls within the definition of "dealer". In relevant part, PACA describes a dealer as

> any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, except that ... (B) no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000 ....

7 U.S.C. § 499a(b)(6)(B).

A retailer is defined as "a person that is a dealer engaged in the business of *selling* any perishable agricultural commodity at retail". 7 U.S.C. § 499a(b)(11) (emphasis added).

---

**3.** Perishable agricultural commodities are defined as "(A) ... Fresh fruits and vegetables of every kind and character; and (B) Includes cherries in brine...." 7 U.S.C. § 499a(b)(4).

**4.** Pursuit in the district court would be a waste of judicial resources. Debtor has funds in escrow with which to pay the portion of the claim applicable to the unpaid balances due on commodities

purchased by the restaurants that have been sold. Debtor is continuing its marketing efforts and should have sufficient funds to pay the approximate $5000.00 that will still be due if the escrow is applied to this claim. Thus, if PACA applies, this court will order Debtor to release the escrow and, if PACA does not apply, Monteverde's will not be granted relief from stay.

The Code of Federal Regulations describes a dealer as

> any person engaged in the business of buying or selling· in wholesale or jobbing quantities in commerce and includes: (1) jobbers, distributors and other wholesalers; (2) retailers, when the invoice cost of all purchases of produce exceeds $230,000.00 during a calendar year. In computing dollar volume, all purchases of fresh and frozen fruits and vegetables are to be counted, without regard to quantity involved in a transaction or whether the transaction was intrastate, interstate or foreign commerce; . . . .

7 C.F.R. § 46.2(m). The Code of Federal Regulations defines retailer as "a person engaged in the business of selling to consumers only." *Id.* at § 46.2(j).

Debtor denies that it is a retailer or dealer of perishable agricultural commodities. Debtor concedes that it produces food in its restaurants that it sells to consumers at retail, but contends that it is not in the business and, in fact, does not merely buy perishable agricultural commodities for resale. Rather, Debtor purchases the commodities, prepares them for use in different foods and garnishes (primarily pizzas and pastas), and sells the resulting product. In Debtor's view, these actions make the restaurant a consumer of the perishable agricultural commodities and make the restaurant's patrons consumers of menu items. Monteverde's asserts that the actions Debtor takes to change the form of the commodities into different products is irrelevant because PACA impresses the trust on the commodities as well as on the products and foods derived therefrom.[5] Monteverde's alleges that the menu items sold by Debtor are merely enhancements to or products derived from the commodities. The trust extends to products derived from the perishable agricultural commodities. 7 C.F.R. § 46.46(c).

The parties agree that Debtor purchased more than the $230,000.00 threshold in 1996 and that Monteverde's preserved its claim to a trust by marking its invoices. During the course of this bankruptcy, Debtor sold most, but not all, of its restaurants and is marketing the remaining restaurants. Based upon the amount of product that was delivered by Monteverde's to each of the stores Debtor sold, Debtor placed amounts in escrow to pay $18,288.29 of Monteverde's claim, if PACA applies.

This case does not present a situation in which Debtor set up an independent purchasing entity to buy perishable agricultural commodities which, in turn, were resold to the restaurants. The parties have stipulated that their business dealings worked as follows: each of the 19 restaurants contacted Monteverde's directly to place an order. Monteverde's (not the Debtor) shipped the produce to the individual store but invoiced Debtor at its corporate headquarters. Debtor paid the bill. The produce was used at the store to which it was delivered. The parties stipulated that Debtor did not sell produce at wholesale, did not warehouse or stockpile it, and did not have other distribution arrangements for it. Monteverde's concedes that Debtor would not be covered by PACA but for the fact that it purchased in excess of $230,000.00 in perishable agricultural commodities in 1996.

Reduced to its essence, the issue is whether PACA applies to restaurant chains which function in the above described manner. There is little case law concerning restaurants. In *In re Monterey House, Inc.*, 71 B.R. 244 (Bankr.S.D.Tex.1986), the debtor was a corporate enterprise consisting of five corporations, nine restaurants and six operating centers that both retailed and wholesaled Mexican food. The court did not have to decide whether PACA applied to restaurants because Monterey House had "voluntarily subjected itself to PACA and the PACA Amendments." *Id.* at 245.

In a recent decision, the Bankruptcy Court for the District of Delaware applied PACA to a restaurant. The court dismissed Debtor's argument that, as a restaurant, it was a

---

**5.** The Regulations provide that PACA trust assets include "perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom". 7 C.F.R. § 46.46(c).

consumer of the perishable agricultural commodities it purchased. *In re Magic Restaurants, Inc.*, 197 B.R. 455 (Bankr.D.Del.1996), leave to appeal denied 202 B.R. 24 (D.Del. 1996). Judge Balick found that each of two restaurant debtor-operators was a "dealer" within the meaning of PACA. The customers of the restaurants were described as the true consumers, because only after they would purchase and eat the menu item of choice was the commodity destroyed and no longer useful. Judge Balick looked to the terms of the statute and concluded that § 499a(b)(6) is unambiguous and does not exclude restaurants or entities such as the debtors who were owners, developers and operators of restaurants. On these bases, Judge Balick decided that PACA applied. The court elected not to examine legislative history on the question of whether Congress intended PACA to include restaurants on the ground that the exercise was not warranted because the statutory language is clear.

■ Although the facts of this case are quite similar to those in *Magic Restaurants,* this court is not convinced that the statute clearly expresses Congressional intent where a restaurant is the alleged "dealer" for these reasons:

(1) The statute has been in existence since 1930 and not until recently have there been any reported decisions dealing with the issue of whether PACA applies to restaurants, even though the definition of "dealer" has remained virtually unchanged since at least 1973. Clearly, restaurants have utilized perishables to prepare meals for sale to their patrons since 1973.

(2) Since 1973 the major change with respect to the definition of "dealer" was an increase in the threshold amount of commodity purchases intended solely for sale at retail before an entity can be considered a "dealer" subject to PACA. The current level is $230,000.00. Monteverde's contends that the threshold has increased solely to protect the small produce buyer who does not purchase "the massive amounts of perishable agricultural commodities required to impose dealer status on a retail dealer's establishment." *Movant's Rebuttal Brief in Support of Motion for Relief From Automatic Stay,* Docket No. 530, page 13. However, Monteverde's assertion ignores the first premise of the definition, which states: "The term 'dealer' means any person *engaged in the business of buying or selling in wholesale or jobbing quantities ...*." 7 U.S.C. § 499a(b)(6) *(emphasis added ).* Further, PACA restricts the definition of "retailer" to "a person that is a dealer *engaged in the business of selling any perishable agricultural commodity at retail."* 7 U.S.C. § 499a(b)(11) (emphasis added). A dealer is one "engaged in the business of buying or selling in wholesale or jobbing quantities". 7 C.F.R. § 46.2(m). Although the definition of "retailer" includes a reference to "dealer," the terms are not coextensive. One must look to the Code of Federal Regulations for clarification. A retailer is "a person engaged in the business of selling to consumers only." *Id.* at § 46.2(j). Implicit in this language is the premise that "the business" is to sell perishable agricultural commodities at retail. A retailer does not become a dealer until "the invoice cost of all purchases of produce exceeds $230,000 during a calendar year." *Id.* at § 46.2(m)(2). A dealer is further defined, however, as "any person engaged in the business of buying *or selling* in wholesale or jobbing quantities...." 7 U.S.C. § 499a(b)(6) (emphasis added). "Wholesale or jobbing quantities" is not defined in the Act and these sections could be understood to mean that restaurants such as Debtor are covered by PACA. The definition in the Code of Federal Regulations is "wholesale or jobbing quantities ... means aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x). Because the statute is not clear on its face, and is silent as to its application to restaurants, we will look beyond the Act itself.

(3) Another reason to examine the regulations is because the statute is administered by an administrative agency, the United States Department of Agriculture, that is empowered to enact regulations. Case law precedent establishes that the Secretary of Agriculture, as head of an administrative agency, has the inherent power to adopt and

promulgate rules of procedure which have the force and effect of law, provided that they are reasonable. *See, e.g., American Fruit Growers, Inc. v. St. Runzo & Co., Inc.,* 95 F.Supp. 842, 845 (W.D.Pa.1951). Examination of the regulations, legislative history, and the Secretary's responses to comments solicited preparatory to enacting final rules may help to elucidate the practice and procedure of the agency charged with administering PACA. Thus, resort to secondary sources is appropriate and necessary in this case.

In preparing to issue final regulations regarding the 1995 amendments to PACA, the Secretary sought public comment and addressed the comments in *The Federal Register,* 61 Fed.Reg. 13385, 13386 (March 27, 1996). That publication contains a clear and concise statement of the Secretary's view of the reach of PACA:

> Another commentor representing a major restaurant chain opposed the proposed rule because he thought the change might bring restaurants under the jurisdiction of the PACA, and argued that therefore, the economic impact of the rule has been underestimated. *Restaurants traditionally have not been considered subject to the PACA by USDA or Congress unless the buying arm of the restaurant is a separate legal entity, and is buying for and/or reselling the product to another entity. Since restaurants are not subject to the PACA, this change in the regulation will not impact restaurants.*
>
> For the reasons stated, we are not making any changes to this final rule based on the above comments.

*Id.* at 13386 (emphasis added).

■ "Under a well settled principle of deference, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" *Katsis v. INS,* 997 F.2d 1067, 1069 (3d Cir.1993), *cert. denied,* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994) (citation omitted). The United States Department of Agriculture, through the Secretary, is entrusted with the administration of PACA's statutory scheme. *See* 7 U.S.C.

§ 499o. The Secretary's statement that restaurants are not subject to PACA is clear, unambiguous and entitled to deference.

In addition to the Secretary's view, the House Report regarding the 1995 amendment to PACA, 1995 U.S.C.C.A.N. 453, recites the view of the House Committee on Agriculture when it submitted a statement in support of the 1995 Amendment to PACA:

> Section 3 phases out license fees for retailers and grocery wholesalers. It defines the term "retailer" as a person who is a dealer engaged in the business of selling any perishable commodity at retail. Approximately 4,000 retailers are currently estimated to be licensed under PACA... *It is not the intent of the Committee that the definition of retailer be construed to include foodservice establishments such as restaurants,* or schools, hospitals and other institutional cafeterias....

H.R. Rep. 104–207, 104th Cong., 1st Sess. (1995), 1995 U.S.C.C.A.N. 453, 1995 W.L. 849090 at *22 (emphasis added).

■ In this case, Monteverde's has also failed to prove all elements of its PACA claim. There is no evidence that this Debtor was engaged in the business of buying or selling perishable agricultural commodities in wholesale or jobbing quantities or in the business of selling such commodities at retail. The affidavit of Steven L. Monteverde does not state that Debtor purchased (or sold) in wholesale or jobbing quantities. No other evidence that Debtor purchased or sold in those quantities has been submitted and the motion itself does not allege that fact. The only stipulated fact is that "Debtor purchases substantial amounts of fruits and vegetables in the operation of its corporate owned restaurants." The stipulations indicate that this debtor was in the business of preparing menu items and selling them in its restaurants. Debtor does not have a separate buying arm and does not resell the commodities to another entity, nor does Debtor retail these commodities directly to a customer.

■ This court adopts the view expressed by the Secretary and the House that restaurants are not subject to PACA.[6] As a result,

---

6. Monteverde's asserts that Debtor is a retailer

because it is subject to sales tax on the food it

no PACA trust is impressed against the assets of the Italian Oven. Monteverde's has no better right to payment than any other creditor holding a general unsecured claim against this estate. Accordingly, Monteverde's has not proven that it is entitled to relief from stay to pursue collection of its claim in another forum and its motion will be denied. Its claim will be dealt with through the plan of reorganization.

An appropriate order will be entered.

sells and the sales tax is imposed only on *retail* sales. However, all restaurant sales are subject to sales tax, whether or not PACA applies. That Debtor must pay sales tax does not, in our opinion, tip the scale in Monteverde's favor.