In re **OLD FASHIONED ENTER-PRISES, INC., d/b/a Garden Café, Debtor.**

**Demma Fruit Company, Ltd., Plaintiff,**

v.

**Old Fashioned Enterprises, Inc., d/b/a Garden Café, Defendant.**

**Norwest Bank Nebraska, N.A., A National Banking Association, Intervenor.**

No. 8:99CV43.

United States District Court, D. Nebraska.

Feb. 4, 2000.

Steven H. Krohn, Smith, Peterson Law Firm, Council Bluffs, IA, for Plaintiff.

Donald J. Pavelka, Jr., Locher, Cellilli Law Firm, Omaha, NE, for Intervenor.

Robert V. Ginn, Brashear, Ginn Law Firm, Omaha, NE, for Defendant.

## ORDER

BATAILLON, District Judge.

### I. Introduction

Before me is the appeal (Filing Nos. 1, 2) by Demma Fruit Company, Ltd. (Demma), from the January 14, 1999, order of Chief Bankruptcy Judge Timothy J. Mahoney granting summary judgment to Old Fashioned Enterprises, Inc. (OFE). The bankruptcy court ruled that the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. §§ 499a–499t (PACA), did not apply to retail restaurants such as OFE and denied Demma's request for an order requiring Demma to turn over "trust" assets in its possession. Demma has submitted briefs, but OFE has elected to adopt the arguments presented in the briefs of the intervenor/appellee, Norwest Bank Nebraska, N.A. (Norwest). I have carefully reviewed the record, the parties' briefs, and the applicable law. I conclude that Demma's appeal should be dismissed because OFE was not a dealer under the PACA.

### II. Factual Background

Demma, a food service distributor, sells and delivers wholesale quantities of produce. OFE, a restaurant chain, bought produce from Demma to use in meals served to its retail customers. OFE purchased from Demma but did not pay for $130,161.21 worth of produce between October 1997 and February 1998. Demma's invoices to OFE contained the language required by 7 U.S.C. § 499e(c)(4) to preserve its PACA rights, but OFE is not licensed under the PACA.

Norwest is OFE's primary secured creditor. It claims a blanket security interest in all of OFE's assets under various financing statements and security agreements. These assets include OFE's accounts receivable and the money Demma claims OFE held in trust for it under the PACA.

When OFE filed its petition for relief under Chapter 11 of the United States Bankruptcy Code, Demma filed an adversary proceeding. Norwest intervened, claiming a perfected security interest in all of OFE's assets. Demma filed a motion for summary judgment. The bankruptcy court denied it and dismissed Demma's adversary proceeding, ruling that OFE was not a dealer under the PACA. Demma then appealed to this court.

### III. Standard of Review

Because the issue of whether OFE is a dealer under the PACA is a question of law, my review is de novo. *Empire Bank v. Fidelity & Deposit Co.*, 27 F.3d 333, 335 (8th Cir.1994).

### IV. Discussion

■ Congress intended the PACA to remedy the burden imposed on commerce in perishable agricultural commodities

caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products.

7 U.S.C. § 499e(c)(1). The PACA requires "a commission merchant, dealer, or broker" which receives perishable agricultural commodities, maintains an inventory of food or other products derived from perishable agricultural commodities, or has any receivables or proceeds from the sale

of such commodities or products, to hold the perishable agricultural commodities "in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2). The effect of this statutory trust is "to make produce sellers' interests in the commodities superior to those of the buyers' secured creditors." *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780 (8th Cir.1991).

■ The question here is whether OFE, a restaurant purchasing large quantities of perishable agricultural commodities, qualifies as a dealer subject to the PACA trust provisions. The PACA defines a dealer as a person in the business of buying or selling wholesale or jobbing quantities of perishable agricultural commodities. 7 U.S.C. § 499a(b)(6). The bankruptcy court observed that because the term "wholesale or jobbing quantities" is not defined in the PACA, it could not determine by simply reading the statute either whether OFE purchased such quantities or whether OFE was a dealer.

The bankruptcy court then examined a regulation promulgated by the United States Department of Agriculture, into whose bailiwick the PACA falls, which defined "wholesale or jobbing quantities" as "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x). Since the parties agree that OFE received such amounts of produce, the bankruptcy court stated that "the plain meaning of this definition would seem to include restaurant businesses such as OFE as a 'dealer.'" The court, however, went on to discuss legislative history for the 1995 amendments to the PACA in which the Secretary of Agriculture commented, "Restaurants traditionally have not been considered subject to the PACA by USDA or Congress

unless the buying arm of the restaurant is a separate legal entity, and is buying for and/or selling the product to another entity." 61 Fed.Reg. 13385, 13386 (Mar. 27, 1996). Deferring to the Department of Agriculture's tradition of excluding restaurants from the "dealer" provisions of the PACA, the bankruptcy court held that the PACA did not apply to OFE.

Demma contends that the bankruptcy court erred by looking behind the plain meaning of the PACA to the definition of the term "wholesale or jobbing quantities" found only in Department of Agriculture regulations. It argues that rules of statutory construction required the bankruptcy court to limit its analysis to the plain meaning of the PACA, especially since the parties did not dispute the meaning of the term "wholesale or jobbing quantities" during the adversary proceeding, and in fact agreed that OFE purchased produce in such quantities. Demma also objects, at length, to the bankruptcy court's deference to the Secretary of Agriculture's informal, non-binding comment found in the legislative history. Appellant's Brief at 6–8. Demma insists that the Department of Agriculture's practice of excluding restaurants as dealers under the PACA is not necessarily correct merely because it is long-standing. *Id.* at 8. Finally, Demma argues that it makes little sense to exclude from operation of the PACA trust on perishable agricultural commodities the very businesses that receive cash for selling the products made from the wholesale produce they purchase—cash that could be used to pay earlier suppliers and growers. *Id.* at 9.

Norwest responds that the bankruptcy court correctly interpreted the PACA. It argues that the statute is not clear and unambiguous because it does not define the term "wholesale or jobbing quantities." Consequently, the bankruptcy court was entitled to defer to a permissible interpretation put forward by the agency entrusted with the statute's implementation under the analysis prescribed in *Chevron USA,*

*Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[1] That interpretation discussed the Department of Agriculture's long-standing practice of excluding restaurants with only retail operations from the PACA trust provisions.

The authority on this issue is not only sparse but directly divided. Two cases have ruled that restaurants are dealers subject to the PACA trust provisions. In *Royal Foods Co. v. L.R. Holdings, Inc.,* 1999 WL 1051978 (N.D.Cal.), the district court ruled that under the plain language of the PACA, the debtor restaurant that bought but did not pay for over a million dollars worth of produce was not exempt from the definition of "dealer" in the PACA. The court found that restaurants are "in the business of" processing perishable goods into "food or other products derived from perishable agricultural commodities," 7 U.S.C. § 499e(c)(2), thus pulling them squarely under the definition of dealer in section 499e(c). The court was not persuaded by the Department of Labor's seventy-year practice of not including restaurants as dealers under the PACA. It stated:

> The Department of Agriculture, however, has issued no rule on this subject, nor has it adjudicated the issue. The Department's tradition and the remarks by the Secretary shown by [the real party in interest] do not amount to a formal, considered position on this issue. If the Department of Agriculture had a formal position on the issue, the Court would be inclined to defer to it pursuant to *Chevron.* When the Act was first made law, restaurants were likely at the

periphery of the Act's central concerns involving aspects of the produce industry such as labeling. Moreover, chain restaurants, like Lyon's, were not prevalent at that time, if they existed at all. Arguably, under the plain language, restaurants buying in wholesale quantities could have and should have then been licensed under the Act to the extent they existed, but the Department of Agriculture instead concentrated on other entities more clearly subject to the Act's core concerns. Congress expanded the purpose of the Act, however, when in 1984 it added the trust provisions at issue in this case. The purpose of the trust provisions, as expressed in the 1984 amendment, applies as naturally to restaurant chains as it does to supermarkets. In the Court's view, the Department of Agriculture should then have formally re-evaluated its benign neglect of restaurant chains. The plain language and purpose of the Act call out for inclusion of restaurants that buy in large wholesale quantities.

*Id.* at *5. The court reversed the bankruptcy court's grant of summary judgment to the debtor restaurant and remanded the case to resolve whether the restaurant purchased perishable agricultural commodities in wholesale or jobbing quantities. *See also JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc.,* 70 F.Supp.2d 1119, 1121–22 (E.D.Cal.1999) ("PACA's definition of 'dealer' encompasses entities like [the restaurant], who purchase perishable agricultural commodities in wholesale quantities. The court will not pierce the text of the statute in service of

---

1. The Court stated:

   When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines

   Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

an asserted legislative intent that is at odds with the statute's plain meaning.")

Two other courts, however, have come to the opposite conclusion. In *In re The Italian Oven, Inc.*, 207 B.R. 839 (Bankr. W.D.Pa.1997), the bankruptcy court held that because Congress did not clearly express its intent about whether a restaurant can be a dealer under the PACA, a bankrupt retail restaurant chain was not a dealer. The court noted that Congress enacted the statute in 1930, but no question of whether it applied to restaurants arose until recently, even though the definition of dealer has been "virtually unchanged" since at least 1973. *Id.* at 843. The court elaborated on the definitional deficiencies of the statute, and concluded that "[b]ecause the statute is not clear on its face, and is silent as to its application to restaurants, we will look beyond the Act itself." *Id.* The court then examined the legislative history involving the comments of the Secretary of Agriculture discussed earlier and concluded, "The United States Department of Agriculture, through the Secretary, is entrusted with the administration of PACA's statutory scheme. The Secretary's statement that restaurants are not subject to PACA is clear, unambiguous and entitled to deference." *Id.* at 844 (citation omitted).[2]

A similar result was reached in *Magic American Café, Inc. v. Bowie Prods.*, C.A. No. 97–300–JJF (D.Del. January 6, 1999) (unpublished opinion). The district court found that because "Congress has not directly spoken to the issue of PACA's applicability to restaurants," it could look beyond the statute to the Department of Agriculture regulations, the Secretary of Agriculture's comments discussed earlier, and other legislative history[3]. The court found that "[c]onsidering the USDA regulations, the Secretary of Agriculture's comments, the ordinary meaning of the terms 'retail' and 'consumer,' and the 'consumer' status of [the debtor restaurants], the Court concludes that [the debtor restaurants] are not 'dealers' or 'retailers' within the terms of PACA." *Id.* at 7. The court held that the debtor restaurant was not subject to the provisions of the PACA, thus reversing the ruling of the bankruptcy court, *In re Magic Restaurants, Inc.*, 197 B.R. 455 (Bankr.D.Del.1996).

■ The better reasoned decisions are those finding that restaurants are not dealers for purposes of the PACA's trust provisions. The statute is ambiguous because it does not define adequately the operational term "wholesale or jobbing quantities." In looking beyond the statute to the Department of Agriculture regulations promulgated under the PACA and to the

2. The bankruptcy court also quoted the statement of the House Committee on Agriculture supporting the 1995 amendments to the PACA:

> Section 3 phases out license fees for retailers and grocery wholesalers. It defines the term "retailer" as a person who is a dealer engaged in the business of selling any perishable commodity at retail. Approximately 4,000 retailers are currently estimated to be licensed under PACA.... It is not the intent of the Committee that the definition of retailer be construed to include foodservice establishments such as restaurants, or schools, hospitals and other institutional cafeterias....

*In re Italian Oven, Inc.*, 207 B.R. 839 (Bankr. W.D.Pa.1997) (*quoting* H.R. Rep. 104–207, 104th Cong., 1st Sess. (1995), 1995 U.S.C.C.A.N. 453, 1995 WL 849090 at *22). As the *Royal Foods* court notes, however, this

statement may be irrelevant to the issues in this case because

> [w]hile the cited legislative history strongly suggests that Congress did not intend 'retailers' to include restaurants, the same cannot be said for 'dealers.' None of the legislative history cited by [the real party in interest] convinces the Court that Congress intended that restaurants buying in wholesale quantities be exempted from the definition of 'dealer.'

1999 WL 1051978, *4. I believe that the question here can be resolved without recourse to the legislative history on the slightly different matter of PACA "retailers."

3. The court also quotes the legislative history cited in the previous footnote. C.A. No. 97–300–JJF at 7–8.

legislative history of the PACA, I am persuaded by the Secretary's comments that restaurants traditionally were not subject to PACA "unless the buying arm of the restaurant is a separate legal entity, and is buying for and/or reselling the product to another entity." 61 Fed.Reg. at 13386. Since OFE does not fit these criteria, the Department of Agriculture would not consider OFE a dealer subject to the PACA trust provisions.

I disagree with the observation of the *Royal Foods* court that "[t]he plain language and purpose of the Act call out for inclusion of restaurants that buy in large wholesale quantities." 1999 WL 1051978 at *5. The court found that restaurants were dealers under the statute in part because Congress *should* have included retail restaurants buying in wholesale quantities when it first enacted the PACA in 1930 and in part because the Department of Agriculture *should* have "formally reevaluated its benign neglect of restaurant chains" when Congress added the trust provisions in 1984. *Id.* The court thus appears to be substituting its judgment for that of Congress and the Department of Agriculture, the agency that has administered the statute for seventy years, under the guise of statutory interpretation.

Accordingly, I conclude that Judge Mahoney's decision should be affirmed and Demma's appeal dismissed.

IT IS THEREFORE ORDERED

1) The appeal (Filing Nos. 1, 2) by Demma Fruit Company, Ltd., from the January 14, 1999, order of Chief Bankruptcy Judge Timothy J. Mahoney granting summary judgment to Old Fashioned Enterprises, Inc., is dismissed; and

2) The January 14, 1999, order of Chief Bankruptcy Judge Timothy J. Mahoney granting summary judgment to Old Fashioned Enterprises, Inc., is affirmed.