In re RESERVOIR DOGS, INC.,
d/b/a Johnny D's, Debtor.

Sysco Food Services Chicago,
Inc., Plaintiff,

v.

Reservoir Dogs, Inc., d/b/a Johnny
D's, Defendant.

Bankruptcy No. 00 B 21434.
Adversary No. 00 A 00758.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 6, 2000.

Louis M. Diess, III, Stephen McCarron, McCarron & Assocs., Washington, D.C., Colby M. Green, Krasnow, Sanberg, Corn-

blath & Hobbs, Chicago, IL, for Sysco Food Services Chicago, Inc.

William l. Needler, William L.Needler & Assocs., Ltd., Chicago, IL, for Debtor/Defendant.

## MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

This adversary proceeding has been brought against the debtor in this Chapter 11 case by a seller of fresh produce, seeking to enforce a trust created by the Perishable Agricultural Commodities Act ("PACA"). The proceeding is now before the court on motions for injunctive relief, filed by the plaintiff, and a motion to dismiss, filed by the debtor. For the reasons discussed below, because the debtor is a restaurant whose purchases of perishable agricultural commodities did not exceed $230,000 annually, the debtor is not a "dealer" subject to PACA. Accordingly, plaintiff's motions for injunctive relief will be denied, and the debtor's motion to dismiss granted.

### Jurisdiction

■ Whether property of the debtor is subject to a trust affects the nature and extent of property of the debtor's bankruptcy estate, and so a proceeding to enforce a trust is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *See Zimmerman v. First Union Nat'l Bank (In re Silva)*, 185 F.3d 992, 994 (9th Cir.1999) (determinations of the nature and extent of estate property are core proceedings). Therefore, this court may enter a final order deciding the pending motions.[1]

### Findings of Fact

The debtor in this Chapter 11 case, Reservoir Dogs, Inc., does business as "John-

ny D's," and will be referred to by that name in this opinion. Johnny D's has only one business—the operation of a restaurant and bar located in Schaumburg, Illinois. Sysco Food Services Chicago, Inc. ("Sysco") is in the business of selling and shipping fresh produce to restaurants, and Johnny D's was one of its customers. In the course of their dealings, Sysco shipped to Johnny D's, on at least one occasion, produce totalling more than one ton in a single day. However, the invoice cost of the produce purchased by Johnny D's never exceeded $230,000 in any calendar year.

On July 24, 2000, Johnny D's filed a voluntary petition under Chapter 11 of the Bankruptcy Code (Title 11, U.S.C.). At the time of the bankruptcy filing, Sysco held unpaid invoices in the amount of $46,796.90 for produce sold to Johnny D's.

On August 21, 2000 Sysco filed an adversary complaint and two motions against Johnny D's. The adversary complaint alleges that Johnny D's is a "dealer" subject to the provisions of the Perishable Agricultural Commodities Act of 1930 as amended ("PACA") and seeks to enjoin Johnny D's from transferring or dissipating its cash (asserted to be trust funds under PACA) to the extent of Sysco's claim. The motions sought a temporary restraining order and preliminary injunction to prevent Johnny D's from any such transfer or dissipation pending final adjudication of the complaint.

After receiving briefs on the issues raised by the complaint and motions, and after a hearing at which the parties agreed to the facts stated above, the court took the matter under advisement.

### Conclusions of Law

■ *PACA and its history.* Resolving the issues now before the court requires

---

1. Federal district courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). However, pursuant to 28 U.S.C. § 157(a), district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern Dis-

trict of Illinois has made such a reference of the pending case. When presiding over a referred case, a bankruptcy judge has jurisdiction, under 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments as to core proceedings within the case.

an understanding of several aspects of the history of PACA. As the Second Circuit explained in *George Steinberg & Son, Inc. v. Butz*, 491 F.2d 988, 990 (2d Cir.1974), the Perishable Agricultural Commodities Act was passed in 1930 "for the purpose of regulating the interstate business of shipping and handling perishable agricultural commodities such as fresh fruit and vegetables" so as to prevent "fraudulent rejections" by purchasers of such commodities in times of declining market prices. PACA, in its original form, "[e]ssentially ... provide[d] a system of licensing and penalties for violations" and applied this system to any buyer who was a "commission merchant, dealer, or broker." *Id.*

*1. The definition of "dealer."* In the present case, Sysco only argues for PACA applicability on the ground that Johnny D's is a "dealer" (rather than a commission merchant or broker) regulated by PACA. Originally, PACA defined "dealer," in relevant part, as follows:

> The term 'dealer' means any person engaged in the business of buying or selling in carloads any perishable agricultural commodity in interstate or foreign commerce, except that ... (B) no person buying any such commodity solely for sale at retail shall be considered as a 'dealer' in respect of any such commodity in any calendar year until his purchases of such commodity in carloads in such year are in excess of twenty....

PACA, ch. 436, § 1(b)(6), 46 Stat. 531, 532 (1930); *see Consolidated Citrus Co. v. Goldstein,* 214 F.Supp. 823, 825 n. 3 (E.D.Pa.1963) (quoting the statutory text). In 1962, the definition of "dealer" was changed to the current form, removing the reference to "carloads," and inserting a dollar value in the retail exception:

> The term "dealer" means any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary [of Agriculture], any perishable agricultural commodity in interstate or foreign commerce, except that ... (B) no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000....

7 U.S.C. § 499a(b)(6).[2] Thus, from its inception to the present, PACA has defined "dealer" as including a buyer of perishable agricultural products in quantities above a defined threshold, but has provided an exception for buyers who purchase "solely for sale at retail" unless these purchases were at a level substantially higher than the ordinarily applicable purchase threshold.

*2. The USDA's determination that restaurants are not "dealers."* As outlined above, there is nothing in the definition of "dealer" under PACA that would prevent its being applied to restaurants. However, from the inception of PACA, the Secretary of Agriculture declined to subject restaurants to PACA's licensing and regulatory system. As noted in *Royal Foods Co. v. L.R. Holdings, Inc.,* 1999 WL 1051978 at *4 (N.D.Cal.1999):

> In 70 years of administering the Act, the Department [of Agriculture] has never licensed restaurants, regardless of what quantities of perishable goods they buy, even though the Act states that "no person shall at any time carry on the business of a ... dealer ... without a license valid and effective at such time." 7 U.S.C. § 499c(a).

Moreover, in explaining a regulation adopted in 1996, the Secretary of Agriculture stated that this omission reflected a

---

**2.** The Secretary of Agriculture has defined "wholesale or jobbing quantities" as "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x). In 1962, the exception for "purchases solely for sale at retail" had a limit of $90,000. Pub.L. 87–725. The limit was raised to $100,000 in 1969 (Pub.L.91–107), to $200,000 in 1978 (Pub.L.95–562), and to the present $230,000 in 1981 (Pub.L.97–98).

policy determination: "Restaurants traditionally have not been considered subject to PACA by USDA or Congress unless the buying arm of the restaurant is a separate legal entity, and is buying for and/or re-selling the product to another entity." 61 Fed.Reg. 13385-01, 1996 WL 134593 at 13386 (1996); *see also Magic Restaurants, Inc. v. Bowie Produce Co. (In re Magic Restaurants, Inc.),* 205 F.3d 108, 114 n. 7 (3d Cir.2000) (citing private correspondence from the USDA confirming its position that "[r]estaurants are not considered 'dealers' ".).

■ *3. Creation of the statutory trust.* In 1984, two years after the last change in the statutory definition of "dealer" discussed above, Congress added the trust provisions on which Sysco now relies, providing, in part:

> Perishable agricultural commodities received by a ... dealer ... and all inventories or food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such ... dealer ... in trust for the benefit of all unpaid suppliers or sellers of such commodities....

7 U.S.C. § 499e(c)(2). The purpose of this new provision was "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." H.R.Rep. No. 98-543, at 2 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406. The definition of "dealer" was not changed.

*4. Lower license fees for "retailers."* The most recent amendments to PACA, in 1995, included provisions gradually eliminating the license fee that had been charged to certain dealers—retailers and grocery wholesalers—who were subject to PACA regulation. Pub.L. 104-48, § 3. The House Report accompanying this legislation explained its operation, in part, as follows:

> Section 3 phases out license fees for retailers and grocery wholesalers. It defines the term "retailer" as a person who is a dealer engaged in the business of selling any perishable commodity at retail. Approximately 4,000 retailers are currently estimated to be licensed under PACA. Those businesses such as grocery stores and other like businesses that predominantly serve those consumers purchasing food for consumption at home or off the premises of the retail establishment are considered to be included in the definition of retailer. It is not the intent of the Committee that the definition of retailer be construed to include foodservice establishments such as restaurants, or schools, hospitals and other institutional cafeterias.

H.R.Rep. No. 104-207, at 7 (1995), *reprinted in* 1995 U.S.C.C.A.N. 453, 454.[3] Again, the 1995 amendments made no change in the definition of "dealer."

*Restaurants as "dealers" under PACA.* The history of PACA, outlined above, provides the background for resolving the dispositive issues raised by the pending motions. The first issue is whether, simply due to its status as a restaurant, Johnny D's is excluded from regulation under PACA. This issue is certainly debatable. On one hand, the statutory definition of a "dealer," subject to PACA regulation, would plainly include restaurants—all buyers of sufficient amounts of fresh produce (and other perishable agricultural products) are covered by the definition of § 1(b)(6) of PACA (7 U.S.C. § 499a(b)(6)), as set out above. This has led several courts to conclude that particular restaurants were "dealers" under PACA, based on the "plain meaning" approach to statutory construction. *See, e.g., In re Magic Restaurants, Inc.,* 205 F.3d 108, 114-15 (3d Cir.2000); *Royal Foods Co. v. L.R.*

---

**3.** The new definition of "retailer," added to PACA by the 1995 legislation, is set out at 7 U.S.C. § 499a(b)(11): "The term 'retailer' means a person that is a dealer engaged in the business of selling any perishable agricultural commodity at retail."

*Holdings, Inc.,* 1999 WL 1051978 at *4 (N.D.Cal.1999); *Sysco Food Services of Seattle v. Country Harvest Buffet Restaurants, Inc. (In re Country Harvest Buffet Restaurants, Inc.),* 245 B.R. 650 (9th Cir. BAP 2000). On the other hand, the consistent and longstanding contrary interpretation of the Secretary of Agriculture/USDA has led other courts and judges to conclude that restaurants are excluded from the definition of dealer. *See, e.g., In re Old Fashioned Enterprises, Inc.,* 245 B.R. 639, 643–44 (D.Neb.2000); *In re The Italian Oven, Inc.,* 207 B.R. 839, 843–44 (Bankr.W.D.Pa.1997); *In re Magic Restaurants, Inc.,* 205 F.3d 108, 117–18 (3d Cir.2000) (Rendell, J., dissenting).

The opinions giving deference to the administrative interpretation of PACA are supported by the reenactment doctrine. As explained by the Supreme Court in *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978), "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. . . ." This presumption may be particularly appropriate in the present situation. As noted above, Congress reenacted PACA in 1995 without changing the definition of dealer, and the legislative history of the 1995 amendments appears to affirmatively adopt the USDA's exclusion of restaurants from that definition. As noted above, the House Report accompanying this legislation expressly states an intent that restaurants should not be included in the class of "retailers" whose license fees would gradually be eliminated. The only apparent ground for this exclusion is that restaurants are not "dealers" subject to licensing under PACA—precisely the position adopted by the USDA.[4] Certainly, if Congress had believed that restaurants were dealers subject to PACA

licensing, it gave no reason for excluding them from the fee reductions prescribed by the 1995 legislation.

■ However, it is unnecessary to reach the question whether restaurants generally are included in PACA's definition of "dealer," since it is clear that Johnny D's is within the definition's "retail" exception.

*Restaurants as "retail" businesses.* The retail exception to PACA's definition of dealer, as discussed above, provides that "no person" shall be considered a "dealer" if the person purchases fresh produce "solely for sale at retail" in quantities not exceeding $230,000 annually. Since it is acknowledged that Johnny D's annual purchases of perishable agricultural commodities never exceeded $230,000, Johnny D's would be within the exception as long as its purchases were solely for sale at retail.

As the term is ordinarily used, there can be little question that a restaurant is a "retail" operation. The dictionary definition of the noun "retail" is "the sale of commodities or goods in small quantities to ultimate consumers—opposed to WHOLESALE." Webster's Third New International Dictionary 1938 (1981). "Wholesale," in turn, is defined as "the sale of goods or commodities in quantity usu[ally] for resale (as by a retail merchant)." *Id.* at 2611. Restaurants, of course, do not sell food for resale—rather, they serve individual portions to the ultimate consumers of their products. Thus, under the ordinary meaning of the words, restaurants must be considered retail, rather than wholesale businesses.

Sysco attempts to avoid this conclusion with two unpersuasive arguments. First, it contends that because restaurants process fresh produce before they serve it, they cannot be retailers. Yet there is nothing in the definition of "retail" that precludes the adding of value prior to sale. A "retail" bakery, for example, may well

---

4. In adopting the 1996 regulation noted above, the USDA rejected a comment from a restaurant expressing concern that the regulation "might bring restaurants under the jurisdiction of PACA." The agency responded simply, "Since restaurants are not subject to the PACA, [the] change in the regulation will not impact restaurants." 61 Fed.Reg. 13385-01, 1996 WL 134593 at *13386.

transform flour, sugar, eggs and shortening into the breads and pastries ultimately offered to its customers. This hardly turns a neighborhood shop into a wholesale bakery. Sysco's argument on this point simply ignores the ordinary meaning of "retail."

Sysco's other argument focusses on the legislative history of the 1995 amendments to PACA. As discussed above, the House Report to this legislation states the intent that restaurants should not be considered within the newly created class of "retailers." From this, Sysco deduces a congressional understanding that restaurants do not engage in "sales at retail." This argument is plainly mistaken. The only reason that the 1995 legislation created the new class of "retailers" was to effect a gradual elimination of license fees for that class, and, as noted above, the apparent reason for Congress's exclusion of restaurants from the class of "retailers" was its understanding that restaurants were not subject to licensing under PACA. Nothing in the House Report suggests that because restaurants should not be considered "retailers" for purposes of license fee reductions (as defined in 7 U.S.C. § 499a(b)(11)), they do not sell "at retail" for purposes of the exception to the definition of dealer in 7 U.S.C. § 499(a)(b)(6). Indeed, another section of the House Report—using "retailer" in its ordinary meaning—states expressly that restaurants *are* retailers. In describing entities in the "fruit and vegetable marketing chain," the Report notes that "[t]he chain begins with the grower who raises produce for marketing and ends with a retailer defined as a business that exclusively sells to consumers." H.R.Rep. No. 104–207, at 13 (1995), *reprinted in* 1995 U.S.C.C.A.N. 453, 460. The Report then defines several of these entities, including shippers, brokers, and commission merchants, and concludes with a definition of "retailer"—"a business only selling to consumers; includes retail grocery chain stores, independent retailers, institutions and restaurants.…" *Id.*

There appears to be no prior reported judicial decision construing the retail ex-

ception. However, it is noteworthy that the Third Circuit concluded that a particular restaurant was a "dealer" under PACA only because its purchases exceeded the amount required for the retail exception: "[W]e are constrained … to hold that a restaurant … which purchases produce in wholesale or jobbing quantities (and in excess of $230,000 per year), is a 'dealer' under 7 U.S.C. § 499a(b)(6).…" *Magic Restaurants*, 205 F.3d at 114–15.

Johnny D's, having purchased produce not in excess of $230,000 per year, solely for sale at retail, is excepted from the definition of "dealer" under 7 U.S.C. § 499a(b)(6), even if the definition would apply to restaurants making larger annual purchases. Accordingly, Johnny D's is not subject to regulation by PACA, and there is no basis for the relief sought in Sysco's complaint or its motions for injunctive relief.

### Conclusion

For the reasons stated above, the debtor's motion to dismiss is granted, and the motions of Sysco Food Services Chicago, Inc. for a preliminary injunction and a temporary restraining order are denied. A separate order will be entered consistent with this opinion.