JC PRODUCE, INC., Plaintiff,

v.

PARAGON STEAKHOUSE
RESTAURANTS, INC.,
Defendant.

No. Civ. S–99–1473DFL DAD.

United States District Court,
E.D. California.

Oct. 20, 1999.

Ronald H. Sargis, Hefner, Stark & Marois, Sacramento, CA, for plaintiff.

Craig A. Diamond, Diamond & Baker, Cedar Ridge, CA, for defendant.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiff JC Produce brings this action seeking to enforce statutory rights under the Perishable Agricultural Commodities

Act ("PACA"). Plaintiff now moves for a preliminary injunction.

JC Produce is a dealer in perishable agricultural commodities. Paragon is an operator of steakhouse restaurants, under the names Hungry Hunter, Carver's Restaurant, and Sheepherders Inn. JC Produce supplied Paragon's restaurants with agricultural commodities for many years, until Paragon changed suppliers after April, 1999. (Pl.'s Mem. in Supp. of Mot. for Prelim.Inj. at 2.) JC Produce alleges that Paragon owes it more than $253,000 for shipments between January and April, 1999, and brings this action seeking to enforce its right to a statutory trust under PACA. JC Produce filed suit on July 30, 1999, and brought this motion seeking a preliminary injunction on August 5, 1999.

### I.

To obtain a preliminary injunction a party must demonstrate either 1) a combination of probable success on the merits and the possibility of irreparable injury, or 2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *See University of Hawaii Professional Assembly v. Cayetano*, 183 F.3d 1096, 1101 (9th Cir. 1999). "These are not two tests, but rather the opposite ends of a single continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Id.* (citation and internal quotation marks omitted).

### II.

PACA applies to sales of perishable agricultural commodities to "commission merchants, dealers or brokers," and provides the suppliers of such commodities with special rights designed to ensure payment. Specifically, PACA provides that all produce-derived revenues and products are deemed to be held in trust by the merchant, dealer, or broker, until all produce suppliers are fully paid.[1] Although the trust funds are nonsegregated, in effect the arrangement permits suit for breach of fiduciary duty if produce-related assets are depleted such that they are not sufficient to pay all suppliers, and takes produce-related assets out of the bankruptcy estate of a bankrupt merchant, dealer, or broker (thus giving trust beneficiaries priority even over secured creditors). JC Produce invokes its rights under this statutory scheme, and moves for an injunction restraining Paragon from depleting its produce-related assets, or in the alternative, requiring Paragon to post a bond sufficient to satisfy JC Produce's claims. The parties contest whether Paragon is a "dealer" of agricultural commodities within the meaning of 7 U.S.C. § 499e, and thus, whether PACA applies to Paragon at all.

For the proceeds of a particular sale to be deemed trust assets under PACA, the sale must be made to a commission merchant, dealer, or broker. JC Produce does not suggest that Paragon is a commission merchant of broker. Thus, unless Paragon is a dealer under PACA the statutory

1. PACA provides:

... Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has

been received by such unpaid suppliers, sellers or agents.

7 U.S.C. § 499e(c)(2). The Ninth Circuit has held that the trust funds may be commingled with other funds, but that the dealer has fiduciary obligations with regard to all funds traceable to the produce transaction. *See In re: Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir.1991) (holding that "the PACA provisions provide for the establishment of a nonsegregated trust under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the produce seller.").

trust remedy is not available against Paragon. "Dealer" is defined by the statute as:

[a]ny person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce....

7 U.S.C. § 499a(6).[2] It is undisputed that Paragon buys produce in "wholesale or jobbing quantities," and that none of the statutory exceptions applies.[3] The parties contest only whether the above definition of "dealer" encompasses the rare restaurant corporation that, like Paragon, purchases or contracts to purchase more than 2000 pounds of agricultural commodities in any one day. JC Produce argues that the statutory language unambiguously covers Paragon; "dealer" is defined as *any* person who buys or sells perishable agricultural commodities in wholesale quantities. Paragon argues that restaurants are not dealers, because they do not resell the perishable agricultural commodities they purchase in unaltered form, but rather process the ingredients into menu items which they then resell to consumers. Thus, Paragon insists, it is a consumer of the produce it purchases, not a dealer. Paragon alternatively argues that the statutory text is ambiguous, and that the legislative history and administrative interpre-

tation of the PACA provision in question both evince an intent to exclude restaurants from PACA's coverage.[4]

Paragon provides no authority for its argument that by "dealers" the statute intends only to describe those who resell products in unaltered form. In fact, the statute implies exactly the opposite; one of the three exceptions enumerated in the statute makes it clear that processors of food are generally to be considered "dealers" unless they process food only in the state where grown: "(C) no person buying any commodity ... for canning and/or processing within the State where grown shall be considered a 'dealer' whether or not the canned of processed product is to be shipped in interstate or foreign commerce...." *See* 7 U.S.C. § 499a(6)(C). Moreover, the trust provisions at issue here apply not only to produce, but also to products derived therefrom, and to the revenue derived from sales of produce and produce-derived products, which plainly encompasses menu items, such as those sold in Paragon's restaurants, and revenues derived therefrom.

PACA's definition of "dealer" encompasses entities like Paragon, who purchase perishable agricultural commodities in wholesale quantities.[5] The court will

---

**2.** The Secretary has defined "wholesale or jobbing quantities" to mean "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x).

**3.** The statute specifically exempts several classes of persons that might otherwise qualify as dealers. Restaurants are notably absent from the list, which exempts: (A) persons who sell commodities that they themselves have produced, (B) low-volume retailers (those whose aggregate purchases of produce amount to less than $230,000 per year), and (C) processors who process produce within the state where grown. *See* 7 U.S.C. § 499a.

**4.** Surprisingly, there are only two reported cases on this specific question. In *In re: Magic Restaurants, Inc.,* 197 B.R. 455 (Bankr. D.Del.1996), the United States Bankruptcy Court for the District of Delaware held that

restaurants fell within the unambiguous statutory language of 499a(6), and so declined to examine the legislative history. *See id.* at 457. The following year, the court in *In re: The Italian Oven, Inc.,* 207 B.R. 839 (Bankr. W.D.Pa.1997), rejected the analysis of *Magic Restaurants,* holding, for reasons that are unclear to the court, that the statutory text is ambiguous. The *Italian Oven* court proceeded to examine the legislative history and administrative interpretation and concluded that those sources supported the conclusion that restaurants are not "dealers" for PACA purposes. *See id.* at 843–44.

**5.** Paragon does not argue that JC Produce failed to preserve its rights to the statutory trust, and the statement on each invoice that the commodities listed thereon are "sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c))"

not pierce the text of the statute in service of an asserted legislative intent that is at odds with the statute's plain meaning. Even if the text were not clear, and resort to other sources were appropriate, neither the administrative opinion nor the legislative history cited by Paragon seems relevant to this issue. The Secretary of Agriculture's opinion that restaurants are exempt from PACA's licensure requirements does not bear on the definition of "dealer." The remarks in the legislative history cited by Paragon, are similarly irrelevant. The first concerns the definition of "retailer," and not the definition of "dealer."[6] The second indicates that the Secretary "lacks jurisdiction over persons who are not subject to license," *see* H.R.Rep. 98–543, 98th Cong.1st Sess.1983, *reprinted in* 1984 U.S.C.C.A.N. 405, but does not appear to bear on the power of PACA trust beneficiaries to enforce their statutory rights.[7]

Because PACA's definition of "dealer" clearly covers Paragon, and because JC Produce properly preserved its PACA trust rights, JC Produce has demonstrated a high probability of success on the merits.

## III.

■ To obtain an injunction, JC Produce must also demonstrate a possibility of irreparable harm. Given JC Produce's strong showing of likely success on the merits, even a relatively weak showing as to the possibility of irreparable injury will suffice. *See Cayetano*, 183 F.3d at 1101. JC Produce notes that Paragon is in difficult financial circumstances. Paragon was sold to its current parent company, Galveston's Steakhouse Corp. ["Galveston"], out of its former parent's bankruptcy, and is presently accruing significant operating losses. (Tedesco Dec. ¶ 9.) Moreover, Galveston appears to be in no position to subsidize Paragon's losses, given its own financial difficulties[8] and its size relative to Paragon.[9]

In the first four months of this year, JC Produce sold over $350,000 worth of produce to the 16 of Paragon's 78 restaurants with which it dealt, and Paragon's total revenues during that period were approxi-

---

appears to comport with the statutory requirements. *See* 7 U.S.C. § 499e(c)(4).

**6.** Paragon quotes the House Report for PACA's 1995 amendments for the proposition that "it is not the intent of the Committee that the definition of retailer be construed to include foodservice establishments such as restaurants, or schools, hospitals and other institutional cafeterias." The present motion does not concern the definition of "retailer," however, but rather that of "dealer." The House Report continues: "Further, the definition of retailer is not intended to include those businesses primarily engaged in the wholesaling or distributing of perishable agricultural commodities, but that occasionally sell directly to consumers." H.R.Rep. 104–207, 104th Cong.1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 453. Needless to say, grocery wholesalers are "dealers" under PACA. The cited passage simply clarifies that the exemption from licensing fees for retailers enacted in 1995 is not to apply to foodservice establishments or grocery wholesalers.

**7.** Courts have generally held that PACA trust beneficiaries can enforce PACA trusts against

any person, whether or not subject to PACA's licensure requirements. *See In re: Richmond Produce Co., Inc.*, 112 B.R. 364 (Bankr. N.D.Cal.1990) (holding that trust beneficiary could recover trust funds paid to third party bank unless bank was bona fide purchaser for value); *C.H. Robinson Co. v. B.H. Produce Co., Inc.*, 723 F.Supp. 785 (N.D.Ga.1989) (permitting trust beneficiary to recover funds paid to third party banks, to extent banks knew of the trust or had security interest in trust assets).

**8.** In the quarter ending March 12, 1999, Galveston reported a net operating loss of $1,596,000, on sales of over $40 million. Even before the acquisition, Galveston was operating at a loss. (*See* Tedesco Dec.Exh. D.)

**9.** Galveston operated 4 restaurants prior to its acquisition of Paragon, which then operated 78 restaurants. Moreover, Galveston reports on its most recent Securities and Exchange Commission Form 10–QSB filing that its total revenues prior to its acquisition of Paragon were approximately 1% of its post-acquisition revenues ($386,000 compared to $40,376,-000). (*See* Tedesco Dec.Exh. D.)

mately $40 million.[10]   Nonetheless, Galveston's cash on hand as of March 23, 1999 (the most recent date in the records before the court) totaled $2,323,000 and Galveston's net assets were just $634,000. (Tedesco Dec.Exh. D.) Given that Galveston's net operating losses for the 12 week period ending March 23 were approximately $1.6 million, Paragon's (and Galveston's) financial difficulties give rise to a reasonable fear on JC Produce's part that Galveston's produce-related assets are being, or are in danger of being, depleted.   Although JC Produce would have priority over even secured creditors with respect to any produce-related assets in the event of Paragon's bankruptcy, if Paragon's remaining produce-related assets were insufficient to satisfy the debt, JC Produce would have no special priority with respect to other assets.   In any event, JC Produce has the right to enforce its trust rights without awaiting a bankruptcy proceeding.   *See* 7 U.S.C. § 499e(c)(5).

Counsel for Paragon indicated at oral argument that a bond sufficient to protect JC Produce's interests, rather than the injunction against depleting produce-related assets originally sought by JC Produce, would minimize the hardship on his client. Given that JC Produce does not object, the court orders Paragon to post such a bond.

## IV.

JC Produce also seeks prejudgment interest at 12% per annum on the invoice amounts, and attorneys' fees for this enforcement action. Although PACA does not specifically provide for the award of interest or attorneys' fees, neither does it preclude them.   *See In re: W.L. Bradley Co.,* 78 B.R. 92, 93 (Bankr.E.D.Pa. 1987).   A PACA trust embraces all produce-related revenues "until full payment of the sums *owing in connection with* [the produce] transactions has been received." 7 U.S.C. § 499e(c)(2) (emphasis added).

Courts generally have held that an award of prejudgment interest on PACA trust amounts is appropriate with or without a contract, and that attorneys' fees also may be considered "sums owing in connection with" a sale where the produce sales contract calls for them.   *See Morris Okun, Inc., v. Harry Zimmerman, Inc.,* 814 F.Supp. 346, 351 (S.D.N.Y.1993); *Bradley,* 78 B.R. 92, 93–95.   Here, JC Produce's invoices expressly reserved PACA trust rights over interest (at 12% per annum) and reasonable attorneys' fees.   Paragon does not suggest that these terms were other than a bargained-for portion of the contract between the parties.   Without deciding the issue definitively, because attorneys' fees and interest are "sums owing in connection with" the produce transactions, they appear enforceable by the trust mechanism and will be included within the bond amount.

## ORDER

Paragon shall obtain a bond in the amount of $313,851 made payable to JC Produce.   The bond shall be payable upon final judgment having been entered by this court in favor of JC Produce, in the amount set forth in such judgment.   The bond shall be maintained in full force and effect until further order of this court, and must be obtained, and filed with the court with copies served on opposing counsel, within 10 calendar days of the day on which JC Produce serves on counsel for Paragon the bond required in the following paragraph.

It is further ordered that JC Produce shall obtain, and file with the court, with copies served on opposing counsel, a bond in the amount of $25,000 under Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

10.   As noted above, over 99% of this amount appears to be attributable to Paragon's res-

taurants.