## In re COUNTRY HARVEST BUFFET RESTAURANTS, INC., Debtor.

### Sysco Food Services of Seattle, Inc., et al., Appellants,

v.

### Country Harvest Buffet Restaurants, Inc., Appellee.

BAP No. WW–99–1038–BoRyK.

Bankruptcy No. 98–01081.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 24, 1999.

Decided Feb. 22, 2000.

J. Thomas Richardson, Cairncross & Hempelmann, Seattle, WA, for Sisco Food Services of Seattle, et al.

Frederick W. Schoepflin, Keller, Rohrback, LLP, Seattle, WA, Attorney for Country Harvest Buffet Restaurants, Inc.

Before BOWIE,[1] RYAN and KLEIN, Bankruptcy Judges.

## OPINION

BOWIE, Bankruptcy Judge.

## I

## INTRODUCTION

In 1930, Congress enacted the Perishable Agricultural Commodities Act ("PACA"). PACA has been amended a number of times through the years. In 1984 Congress created as a remedy under PACA a statutory trust in which essentially all produce, produce-derived revenues or products would constitute the trust res until all produce suppliers are paid in full. *See* 7 U.S.C. § 499e(c)(2); *JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc.*, 70 F.Supp.2d 1119, 1120 (E.D.Cal. 1999). Such suppliers are granted statutory priority in repayment, even senior to secured creditors. Moreover, the res of a PACA trust does not become property of a bankruptcy estate until all eligible suppliers have been paid in full. *JC Produce, Inc., supra.*

## II

## ISSUE

The ultimate issue is whether the debtor as a restaurant chain is subject to the trust provisions of PACA, 7 U.S.C. § 499a et seq. That question turns on the penultimate issue of whether the debtor is a "dealer," as defined at 7 U.S.C. § 499a(b)(6). If the debtor is a dealer then certain monies held by it would not become property of the estate, but rather would be payable to appellants, the SYSCO companies, as funds held in trust.

We **REVERSE and REMAND.**

1. Hon. Peter W. Bowie, Bankruptcy Judge for the Southern District of California, sitting by designation.

## III

## FACTS

The appellants, SYSCO Food Services of Seattle, Los Angeles, San Francisco, and Montana (collectively "SYSCO") are food service distributors that sell and deliver wholesale quantities of produce. The debtor, Country Harvest Buffet Restaurants, Inc. ("Debtor"), is a restaurant chain that purchases wholesale quantities of produce for use in the preparation of meals served to customers. At issue in this matter are purchases from SYSCO of $27,648.23 worth of produce made by the Debtor. SYSCO delivered the produce. SYSCO sent invoices to the Debtor which, according to SYSCO, contained the wording required under 7 U.S.C. § 499e(c) to preserve its PACA trust rights. The Debtor did not make payment on the invoices. The Debtor filed its bankruptcy petition on January 28, 1998.

SYSCO made a claim on the Debtor for full payment under the trust provisions of PACA, § 499e(c). The Debtor objected to the claim. By order entered January 5, 1999, the bankruptcy court sustained the objection. Attached to the bankruptcy court's order is the transcript of the hearing which serves, per the court's instructions, as its findings and rationale. At the hearing the court explained that it agreed with the analysis set forth in *In re Italian Oven, Inc.*, 207 B.R. 839 (Bankr.W.D.Pa. 1997), and concluded that PACA simply does not apply to restaurants. The court relied, at least in part, on certain legislative history and comments of the Secretary of Agriculture to the effect that PACA was not intended to cover restaurants. The court found that the Debtor was not "in the business of" buying perishable commodities and thus was not a "dealer" as defined under PACA. Having so found, the court did not reach the issue of whether SYSCO took the proper steps to perfect its PACA claim. On January 13,

1999, SYSCO filed a notice of appeal. The Debtor filed no notice of cross-appeal.

The Debtor agrees with the facts as stated but adds that SYSCO's invoices stated 21–day payment terms. However, SYSCO and the Debtor did not reduce their agreement for 21–day payment terms to writing.[2]

## IV

## STANDARD OF REVIEW

The Panel reviews conclusions of law de novo. *In re Pardee*, 218 B.R. 916, 919 (9th Cir. BAP 1998) (citing *In re Federated Group, Inc.*, 107 F.3d 730, 732 (9th Cir. 1997)).

## V

## DISCUSSION

 PACA trusts are governed by traditional principles of trust law, and property subject thereto is excluded from property of the bankruptcy estate. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir.1996). Accordingly, as noted, a perfected PACA trust beneficiary is entitled to payment in full from the trust assets before payment to any other creditors, secured or unsecured. *Id.*

 In order to become a perfected PACA trust beneficiary, a PACA claimant must meet three requirements. First, the goods in question must be perishable agricultural commodities. Second, the commodities must have been received by a commission merchant, a dealer, or broker. Third, the claimant must have provided written notice of its intent to preserve its rights under PACA within thirty days after payment became due. *In re Long*

*John Silver's*, 230 B.R. 29, 32 (Bankr. D.Del.1999).

The Debtor concedes the first element, and the court never reached the third. Its decision was based upon the legal conclusion that the Debtor did not meet the PACA definition of "dealer." This is the issue before the Panel—whether the Debtor is a "dealer" under PACA.

 The first step in any statutory analysis is to look to the language of the statute and "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The reviewing court's "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). Ambiguity is "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843 (citations omitted). Thus, we move to the statute.

PACA section 499a(b)(6) provides that for the purposes of PACA:

> (6) The term "dealer" means any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity...

As discussed above, the parties have agreed that the goods in question constitute "perishable agricultural commodit[ies]." The parties also agreed that the volume involved constituted "wholesale or jobbing quantities, as defined by the Secretary."[3] Thus, the sole issue is whether

---

2. As discussed below, these facts go to an issue which was raised in the Debtor's appellate brief but neither addressed by the bankruptcy court nor designated as an issue by cross-appeal. The issue is not reached by the Panel.

3. The Debtor seeks to rely on comments of the Secretary of Agriculture to interpret the whole of § 499a(b)(6), arguing that the phrase "as defined by the Secretary," applies to the entire section. The Panel disagrees. The phrase modifies only the term "wholesale or jobbing quantities." It would defy logic for the PACA statute to provide a definition of

the Debtor was "engaged in the business of buying or selling" such goods. SYSCO argues that the statute is unambiguous—that clearly the Debtor was in the business of buying commodities—buying commodities is part and parcel of preparing and selling food to the public.

The Debtor contends rather that the plain language excludes the Debtor. Specifically, the Debtor argues that it "was not a 'dealer' under the plain meaning of PACA. [Debtor] was engaged *in the business of* operating a chain of restaurants. [Debtor's] business incidentally involved the buying of fresh produce, which the Debtor used in the preparation of meals which it sold to its customers." This is the linchpin of the Debtor's position.

Under the Debtor's argument only those entities whose *primary* business was buying or selling perishable commodities would be included as dealers under PACA. In essence, then, the Debtor reads into § 499a(b)(6) a requirement that a dealer must be "primarily" in the business of buying or selling. The Debtor objects to this characterization of its position—it never uses the term *primary* or *primarily,* but there is no other way to state the Debtor's ultimate argument. Under the Debtor's reading of the statute, any entity which could make the argument that they had a primary business *other than* buying or selling commodities could avoid application of the PACA provisions. Necessarily, then, the only entities which could not make that argument would be those primarily in the business of buying or selling commodities. The Panel sees at least two problems with this approach.

First, applying the Debtor's logic would render superfluous the term "or" in the statute. Under the Debtor's interpretation the only entities which would be covered would be those involved in both buying *and* selling. There is no other entity which could be *in the business of buying,* under the Debtor's limited reading of that

term, than a middleman who is also in the business of selling. If the intent of Congress was to limit PACA trust liability to commodities middlemen, then they would not have used the phrase "buying *or* selling." Under the Debtor's logic, any entity which purchases perishable commodities for a purpose other than buying *and* selling such commodities would be excluded from the PACA because such an entity could argue, as does the Debtor, that its primary business is not the buying but rather the preparation and resale of the commodities in a form which does not meet the definition of perishable commodities. Indeed, it is difficult to distinguish the Debtor from a canner or producer of frozen vegetables or french fries or hash browns. While the product sold may not be covered under PACA (like breaded french fries in *Long John Silver's,* 230 B.R. at 35) the raw materials purchased are. See *Endico Potatoes, Inc. v. CIT Group,* 67 F.3d 1063 (2nd Cir.1995), *Long John Silver's,* 230 B.R. 29, and *Century 21 Products, Inc. v. Glacier Sales,* 129 Wash.2d 406, 918 P.2d 168 (1996). The argument of a cannery that its business is preparing and selling canned corn, but not buying the fresh corn, defies credulity.

Furthermore, Congress has demonstrated its ability to insert the term "primarily" when it chooses to so restrict a definition. See, for example, § 499a(b)(12):

(12) The term "grocery wholesaler" means a person that is a dealer *primarily* engaged in the full-line wholesale distribution and resale of grocery and related nonfood items (such as perishable agricultural commodities, dry groceries, general merchandise, meat, poultry, and seafood, and health and beauty care items) to retailers. However, such term does not include a person described in the preceding sentence if the person is primarily engaged in the wholesale distribution and resale of perishable agricultural commodities rather than other

"dealer" which was subject to definition by the Secretary. If that were the intent then

§ 499a(b)(6) would simply provide that "dealer" is as defined by the Secretary.

grocery and related nonfood items. (Emphasis added.)

■ If the intent of Congress was as Debtor argues, another way Congress might have manifested that intent would have been to exclude "dealers" *not primarily* in the business of buying, with the other exemptions specifically set out in § 499a(b)(6)(A)-(C). As recognized by the court in *Royal Foods Co. v. L.R. Holdings, Inc.*, 1999 WL 1051978 (N.D.Cal.1999), Congress wrote an expansive definition of the term "dealer" in § 499 a(b)(6), and found it necessary to exclude from it certain types of dealers who would otherwise have been clearly covered by the definition. Those excluded are: 1) producers selling what they raised; 2) persons who buy solely for sale at retail, but only if the invoice costs of perishable goods purchased do not exceed $230,000 in a calendar year; and 3) certain canners or processors who buy and can or process within the same state as the produce is grown. Traditional canons of statutory construction establish that those not expressly excluded are included within the definition of "dealer." If Congress wants to exclude some or all restaurant chains from the term "dealer," Congress should amend § 499a(b)(6).

■ In the instant matter, the bankruptcy court adopted the reasoning of *In re Italian Oven, Inc.*, 207 B.R. 839 (Bankr. W.D.Pa.1997), in which that court held that a restaurant chain was not a dealer within the PACA definition.[4] The Panel is not persuaded by the analysis in that case. In *Italian Oven*, that court first looked to PACA's definition of "dealer." *Id.* at 841. As discussed above, we believe that was and is an appropriate place to start. However, the analysis then jumped without explanation to a definition of "retailer."

A retailer is defined as "a person that is a dealer engaged in the business of selling any perishable agricultural commodity at retail". 7 U.S.C. § 499a(b)(11) (emphasis added).

*Id.* Certainly, this would be appropriate if "retailer" were included as an element of the definition of "dealer," but it is not. There is no reason to look to the definition of "retailer" to determine whether someone is a "dealer."

The *Italian Oven* court then looked beyond the PACA provisions, to the Code of Federal Regulations:

The Code of Federal Regulations describes a dealer as

any person engaged in the business of buying or selling in wholesale or jobbing quantities in commerce and includes: (1) jobbers, distributors and other wholesalers; (2) retailers, when the invoice cost of all purchases of produce exceeds $230,000.00 during a calendar year. In computing dollar volume, all purchases of fresh and frozen fruits and vegetables are to be counted, without regard to quantity involved in a transaction or whether the transaction was intrastate, interstate or foreign commerce;....

7 C.F.R. § 46.2(m). The Code of Federal Regulations defines retailer as "a person engaged in the business of selling to consumers only."

*Id.* at 842. This analytical leap from PACA to the Code of Federal Regulations is no more helpful than the earlier leap from "dealer" to "retailer." The objective is to determine whether the party is a "dealer" for the purposes of PACA. PACA contains a definition of "dealer." There is no reason then to look to the definition of "retailer." There is also no reason to look to a definition from a separate and subordinate set of implementing regulations when the statute in question provides its own definition.

Indeed, SYSCO appropriately argues that the issue of whether the Debtor is a

---

4. In the instant matter, the court stated: "[t]o make a long story a short one, I agree with the analysis set forth in *Italian Oven* and conclude that PACA does not apply to restaurants."

"retailer" is irrelevant. A retailer is one who sells perishable commodities at retail—SYSCO admits that the Debtor's end product does not constitute perishable commodities, but correctly points out that it matters not—dealer and retailer are two separate concepts.

SYSCO also points out that the House Report relied upon by the court in this case and in *Italian Oven* is not on point:

It is not the intent of the Committee that the definition of retailer be construed to include foodservice establishments such as restaurants, or schools, hospitals and other institutional cafeterias. Further, the definition of retailer is not intended to include those businesses primarily engaged in the wholesaling or distributing of perishable agricultural commodities, but that occasionally sell directly to consumers.

H.R.Rep. 104–207, 104th Cong., 1st Sess. pp. 1, 7 (1995), U.S.Code Cong. & Admin.News 1995, pp. 453, 454. First, the comment deals again with the definition of "retailer." Second, the issue discussed is in connection with amendments to the licensing requirements under PACA specifically for retailers and grocers. The question of whether restaurants are dealers was not at issue.

There is further support for the Panel's conclusions. The court in *Italian Oven* appeared to recognize that if the Debtor had spun off its purchasing arm into a wholly-owned subsidiary that bought the commodities, the commodities and their proceeds would be impressed with a PACA trust—that is, the subsidiary would be a dealer under § 499a(b)(6). 207 B.R. at 842, 844. The Panel sees no appreciable difference between that situation and a purchasing division or office within the corporation, and no reason why the result should be different, unless Congress intended PACA to reach only middlemen. That notion has already been dispelled and, as noted, would do violence to the statute written in the disjunctive—"buying or selling."

Like the district court in *Royal Foods Co., supra,* the Panel has recognized that the Secretary of Agriculture apparently has chosen not to pursue restaurant chains to require them to obtain a PACA license as a "dealer" or be subject to a fine, as provided in 7 U.S.C. § 499c. Whatever the Secretary's reason this court is obliged to apply the unambiguous definition of 7 U.S.C. § 499a(b)(6), and cannot ignore it in favor of some possible inference arising from an accident of history or any exercise of prosecutorial discretion.

For all the foregoing reasons, the Panel concludes that restaurant chains are not excluded from the term "dealer" as used in PACA.

There is a remaining issue which was not resolved by the bankruptcy court. That issue is whether SYSCO's form of notice was legally sufficient to establish and preserve its PACA rights, if any. Because the issue was not addressed by the bankruptcy court, the matter is remanded for determination on that issue.

## VI

## CONCLUSION

The Debtor as an operator of a chain of restaurants, and purchasing the requisite volume of perishable agricultural commodities, falls within the definition of a "dealer" under PACA and may thus be subject to the trust provisions therein. The order of the bankruptcy court on this issue is REVERSED.

The issue of whether SYSCO properly perfected its claim under PACA was neither designated on appeal nor ruled upon by the bankruptcy court. This issue is REMANDED to the bankruptcy court.

KLEIN, Bankruptcy Judge, concurring.

I concur in the result and agree with the statutory analysis in *Royal Foods Co. v.*

*L.R. Holdings, Inc.,* 1999 WL 1051978 (N.D.Cal.1999).

I do not think the reasoning in *Monteverde's Inc. v. Italian Oven, Inc. (In re Italian Oven, Inc.),* 207 B.R. 839 (Bankr. W.D.Pa.1997), is as fallacious as the majority suggests. Rather, I think it a strained interpretation that is designed to avoid upsetting 70 years of practice and that may even be an effort to apply the Reenactment Doctrine.

Like the *Royal Foods* and *Italian Oven* courts, I take seriously the fact that the restaurant industry and the Secretary of Agriculture have operated for 70 years on the assumption that restaurants are not subject to PACA and need not be licensed.

Nevertheless, while not free from doubt, the statute as amended in recent years to impose a trust in favor of sellers is appropriately construed as representing Congress directly speaking to the issue of *trust status* in language that is not ambiguous. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the question of the requirement of a license were to be in issue, then there may be a stronger case for *Chevron* deference to the Secretary. Such is not the case in this appeal.