# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1745

_____

| | | |
|---|---|---|
| In re: Old Fashioned Enterprises, Inc., doing business as Garden Café, | * * * | |
| Debtor, | * * | |
| Demma Fruit Company, Ltd., | * * | |
| Appellant, | * * | |
| v. | * * | Appeal from the United States District Court for the District of Nebraska. |
| Old Fashioned Enterprises, Inc., doing business as Garden Café, | * * * | |
| Appellee, | * * | |
| Norwest Bank Nebraska, N.A., A National Banking Association, | * * * | |
| Intervenor - Appellee, | * * | |
| U.S. Trustee. | * | |

_____

Submitted: October 24, 2000

Filed: January 5, 2001

_____

Before McMILLIAN, LAY, and ROSS, Circuit Judges

_____

ROSS, Circuit Judge.

Demma Fruit Company, Ltd. (Demma) appeals a judgment of the district court entered in favor of Old Fashioned Enterprises, Inc. (OFE), a restaurant chain. In re Old Fashioned Enter., 245 B.R. 639 (D. Neb. 2000). The sole issue in this appeal is whether OFE is a "dealer" as defined in the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a(b)(6). The district court held it was not. We reverse.

## BACKGROUND

OFE purchased produce from Demma for use in restaurant meals. At the time OFE filed for Chapter 11 bankruptcy, it owed Demma $130,161.21. Demma filed an adversary proceeding, asserting that OFE was a dealer under PACA and thus subject to PACA's trust provision. In 1930, Congress enacted PACA to protect produce growers and suppliers from financially irresponsible buyers. See In re Lombardo Fruit & Produce Co., 12 F.3d 110, 112 (8th Cir. 1993). In 1984, Congress amended PACA to provide further protection by creating a statutory trust, which requires a dealer to hold proceeds from the sale of produce and produce-derived products for the benefit of unpaid produce sellers. See id. (citing 7 U.S.C. § 499e(c)(2)).

As relevant here, PACA defines a dealer as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce," provided that purchases exceed $230,000 a year. 7 U.S.C. § 499a(b)(6). The Secretary defined the term "wholesale or jobbing quantities" to mean "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x).

Norwest Bank Nebraska, OFE's primary secured creditor, intervened, asserting OFE was not a dealer subject to the PACA trust. The parties did not dispute that OFE had purchased wholesale or jobbing quantities. Despite the lack of dispute and the bankruptcy court's belief that the meaning of the regulation was clear, it nonetheless deferred to the agency's interpretation. In concluding OFE was not a dealer, the court

relied on the seventy-year practice of the United States Department of Agriculture (USDA) of excluding restaurants from PACA's coverage and a 1995 comment by the Secretary that a restaurant was not a dealer unless its buying arm was a separate legal entity.

Demma appealed to the district court, which agreed that OFE was not a dealer under PACA.  Citing Chevron USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), the court held that the statute was ambiguous because Congress did not define the term "wholesale or jobbing quantities" and thus deference to the agency's interpretation was appropriate.  245 B.R. at 643-44.

## DISCUSSION

On appeal, Demma argues that the district court erred in holding OFE was not a dealer, asserting because the meaning of the statutory definition was plain no deference to the agency was due.  Reviewing this question of law de novo, we agree.  Under Chevron, if from the plain meaning of the statute Congressional intent is clear, except for rare instances, "that is the end of the matter."  Chevron, 467 U.S. at 842.  However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Id. at 843.  Where, as here, "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."  Id. at 843-844.  "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  Id. at 844.

In this case, Norwest does not assert that the regulation defining the term "wholesale or jobbing quantities," 7 C.F.R. § 46.2(x), is arbitrary, capricious, or manifestly contrary to PACA.  To the contrary, there has never been a dispute as to the meaning of the regulation.   As the bankruptcy court indicated, the meaning is plain.  Nor is there a dispute that OFE purchased wholesale or jobbing quantities, as defined

by the regulation. Although substantial deference is due an agency's interpretation of its regulations, no deference is due if the interpretation is contrary to the regulation's plain meaning. See Shalala v. St. Paul-Ramsey Med. Ctr., 50 F.3d 522, 528 (8th Cir. 1995). We also note that this court has indicated that an agency's interpretation which is not subjected "to the rigors of notice and comment" is not entitled to substantial deference. King v. Morrison, No. 00-1533, 2000 WL 1664910, at *3 (8th Cir. Nov. 7, 2000) (internal quotation omitted) (refusing to defer to agency program statement). See also United States v. 162 MegaMania Gambling Devices, No. 99-5064, 2000 WL 1634741, at *4 (10th Cir. Oct. 31, 2000) (court "not obligated to afford [agency's] informal pronouncements the same deference prescribed under Chevron").

Thus, the regulation is controlling, and there is nothing ambiguous about the application of the term "wholesale or jobbing quantities" to this case. As Demma notes, a court must determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). In other words, "[a]mbiguity anywhere in a statute is not a license to the administrative agency [or a court] that interprets the statute to roam about that statute looking for other provisions to narrow or expand through the process of definition." Bower v. Federal Express Corp., 96 F.3d 200, 208 (6th Cir. 1996). "The delegated authority to interpret an ambiguous term extends only to the specific subject matter covered by the ambiguous term." Id.

Nor do we find any other ambiguity in the statutory definition of dealer in 7 U.S.C. § 499a(b)(6) ("any person engaged in the business of buying or selling wholesale or jobbing quantities"). In In re Magic Restaurants, Inc., 205 F.3d 108, 117 (3d Cir.), cert. denied, 121 S.Ct. 56 (2000), the Third Circuit, the only appellate court that has addressed the issue, was "constrained by PACA's unambiguous statutory language to hold that a restaurant . . . [that] purchases produce in wholesale or jobbing quantities (and in excess of $230,000 per year), is a 'dealer' under 7 U.S.C. §

499a(b)(6)." We find the court's reasoning persuasive and adopt it.[1] See also In re Country Harvest Buffet Restaurants, Inc., 245 B.R. 650 (B.A.P. 9th Cir. 2000) (same); JC Produce , Inc. v. Paragon Steakhouse Restaurants, 70 F. Supp.2d 1119 (E.D. Cal. 1999) (same); Royal Foods Co. v. L.R. Holdings, Inc., 1999 WL 10519878 (Bankr. N.D. Cal. 1999)(same). But see In re The Italian Oven, Inc., 207 B.R. 839 (W.D. Pa. 1997) (holding PACA ambiguous and deferring to agency's interpretation).

In Magic Restaurants, the Third Circuit acknowledged the agency's long-standing practice of excluding restaurants under PACA, but noted "'a reviewing court should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms.'" 205 F.3d at 114-15 (quoting Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992)). Contrary to Norwest's assertion at oral argument, the Third Circuit rejected an argument that the express delegation to the Secretary created an ambiguity in the statutory definition of dealer. See id., at 114 n.6; see also Country Harvest Buffet, 245 B.R. at 653 n.3 (rejecting ambiguity argument based on the express delegation). As in this case, in Magic Restaurants and Country Harvest Buffet, there were no disputes that the restaurants purchased wholesale or jobbing quantities. See Magic Restaurants, 205 F.3d at 115; Country Harvest Buffet, 245 B.R. at 653.

As to the other statutory terms, because the term person includes individuals, as well as "'partnerships, corporations, and associations,'" OFE is a person under PACA. Magic Restaurants, 205 F.3d at 115 (quoting 7 U.S.C. § 499a(b)(1)). In Magic Restaurants, the dissent believed that the phrase "engaged in the business of" was ambiguous, reasoning restaurants were not engaged in the business of buying or selling produce. Id. at 117-118. However, we agree with the majority that the dissent's

---

[1]At the time of the bankruptcy and district court decisions, the Third Circuit had not yet decided Magic Restaurants. We note that the district court relied on the lower court opinion in that case, which was reversed on appeal.

reasoning was flawed because it read the word "primarily" into the statute. "[N]othing about the ordinary meaning of the words 'engaged' or 'business' indicates that the statutory definition should be understood to apply only to those engaged <u>primarily</u> in this business." <u>Id.</u> at 115. Moreover, as the Ninth Circuit bankruptcy appellate panel pointed out, "Congress has demonstrated its ability to insert the term 'primarily' when it chooses to so restrict a definition." <u>In re Country Harvest Buffet</u>, 245 B.R. at 654 (citing § 499a(b)(12)). The panel also noted that Congress had not included restaurants in the statutory exceptions to the broad definition of dealer, and "canons of statutory construction establish that those not expressly excluded are included within the definition." <u>Id.</u> at 655.

In ascertaining the plain meaning, we not only look to "the particular statutory language at issue," but also to "the language and design of the statute as a whole." <u>K Mart Corp. v. Cartier, Inc.</u> 486 U.S. 281, 291 (1988). We agree with the Third Circuit that holding restaurants that purchased sufficient quantities "responsible to produce sellers . . . provides protection of produce suppliers up through the distribution chain and therefore furthers the purposes of the trust provision." <u>Magic Restaurants</u>, 205 F.3d at 116. In addition, as Demma points out, "the trust provisions at issue here apply not only to produce, but also to products derived therefrom, and to the revenue derived from sales of produce and produce-derived products, which plainly encompasses menu items, such as those sold in [OFE] restaurants, and revenues derived therefrom." <u>JC Produce</u>, 70 F. Supp.2d at 1121.

In sum, we hold that OFE was a "dealer" under the plain language of 7 U.S.C. § 499a(b)(6). Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT