# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2546

_____

| | | |
|---|---|---|
| Saint Marys Hospital of Rochester, Minnesota, | * * * | |
| Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Michael O. Leavitt, in his official capacity as Secretary of Health and Human Services, | * * * * | |
| Appellee. | * | |

_____

Submitted: March 13, 2008
Filed: July 28, 2008

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

After having its Medicare-reimbursement-adjustment request denied as untimely by the Administrator of the Centers for Medicare and Medicaid Services (CMS),[1] Saint Marys Hospital of Rochester, Minnesota ("Saint Marys") sought

_____

[1]CMS, formerly known as the Health Care Financing Administration, is the operating component of the United States Department of Health and Human Services (DHHS) charged with administering the Medicare program.

judicial review of the final administrative decision[2] by commencing a civil action in the district court against Michael Leavitt, in his official capacity as the Secretary of the United States Department of Health and Human Services ("Secretary"). The district court[3] granted summary judgment in favor of the Secretary, upholding the Administrator's decision. We affirm.

## I. *Background*

As a provider of Medicare benefits, Saint Marys is entitled to reimbursement for certain services it provides to Medicare patients. 42 U.S.C. § 1395, et seq. As such, at the close of fiscal year 1994, Saint Marys submitted a cost report to its fiscal intermediary[4] showing its 1994 costs and the portion of those costs to be allocated to Medicare. *See* 42 C.F.R. § 413.02 (requiring cost reports from Medicare providers on an annual basis based on the provider's accounting year). The intermediary reviewed the cost report, determined the total amount of Medicare reimbursement due to Saint Marys, and on June 24, 1997, issued Saint Marys a Notice of Program Reimbursement (NPR) for fiscal year 1994. *See* 42 C.F.R. § 405.1803 (requiring an intermediary, upon receipt of a Medicare provider's cost report, to furnish the provider an NPR within a reasonable period of time).

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), in certain circumstances, permits a hospital to request an exception or adjustment to the

---

[2]A decision by the CMS Administrator stands as the final decision of the DHHS Secretary. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877.

[3]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[4]CMS contracts out its payment and audit functions under the Medicare program to third-parties known as fiscal intermediaries. Blue Cross Blue Shield of Minnesota was Saint Marys's fiscal intermediary for fiscal year 1994, but Blue Cross Blue Shield was subsequently replaced by Noridian Administrative Services.

otherwise applicable rate-of-increase ceilings relevant to the reimbursement of operating costs. 42 U.S.C. § 1395ww(b)(4)(A)(i); 42 C.F.R. § 413.40. Believing that it met the circumstances necessary, Saint Marys prepared a request for adjustment to the TEFRA rate-of-increase ceiling for fiscal year 1994 and placed the request in the mail on December 22, 1997. The intermediary received the adjustment request on December 24, 1997, but rejected it as untimely because the request was not received by the intermediary until 183 days after the date of the NPR—three days beyond the 180-day deadline set forth by the regulations.[5] *See* 42 C.F.R. § 413.40(e)(1).

Saint Marys timely appealed the intermediary's denial to DHHS's Provider Reimbursement Review Board ("Review Board"), asserting that the regulations only required the adjustment request to be mailed, not received, within 180 days of the NPR. The Review Board ruled in favor of Saint Marys, vacated the denial of the adjustment request, and remanded for the intermediary to consider the request on the merits. CMS then timely appealed the Review Board's decision to the CMS Administrator for final administrative review. The Administrator reversed the Review Board's decision, ruling that TEFRA adjustment requests must be received by the intermediary within the 180-day period.

Saint Marys timely sought judicial review of the final agency decision in the United States District Court for the District of Minnesota. Based on an undisputed factual record, the parties submitted cross-motions for summary judgment. The district court denied Saint Marys motion and granted summary judgment in favor of the Secretary, finding that the Secretary had consistently interpreted the regulatory language as requiring that a TEFRA adjustment request had to be received by the intermediary within 180 days from the date of the NPR. The court concluded that the

---

[5]December 21, 1997, was the 180th day after June 24, 1997, the date of the NPR. However, because December 21, 1997, fell on a Sunday, the parties agree that any act required to be performed by that date need only have been performed by Monday, December 22, 1997, to comply with the 180-day time period.

Secretary's determination that Saint Marys TEFRA adjustment request was untimely was not arbitrary, capricious, an abuse of discretion, or contrary to law.

## II. *Discussion*

The timeliness of a request for an adjustment to the TEFRA rate-of-increase is governed by 42 U.S.C. § 413.40(e)(1). Prior to October 1, 1995, and thus during Saint Marys's 1994 cost reporting period, § 413.40(e)(1) provided:

> A hospital may request an adjustment to the rate-of-increase ceiling imposed under this section. The hospital's request to its fiscal intermediary may be made upon receipt of the intermediary's notice of amount of program reimbursement (NPR) and must be *made* no later than 180 days after the date on the intermediary's NPR for the cost reporting period for which the hospital requests an adjustment.

42 C.F.R. § 413.40(e)(1) (1994) (emphasis added).

Saint Marys contends that the 1994 version of the regulations should apply. Relying on the language of the 1994 regulations—that the adjustment request must be "made" within 180 days from the date of the NPR—and the directives in the Medicare Provider Reimbursement Manual (PRM),[6] Saint Marys argues that it timely "made" its adjustment request because it mailed the request before the 180-day period expired.

---

[6]Section 3004.2 of the PRM instructs Medicare providers that:

> A hospital's request for an adjustment to the payment allowed under the rate of increase ceiling must be submitted to its intermediary no later than 180 days from the date on the intermediary's Notice of Program Reimbursement (NPR). The request may be filed once the cost report is submitted.

CMS-Pub. 15-1, § 3004.2

The regulations, however, did not define the term "made" thus making the adjustment request timeliness deadline ambiguous. The term "made" could plausibly mean either the date that the request was sent or mailed, or the date that the request was received by or filed with the intermediary. To "clarify" the ambiguity, CMS proposed an amendment to § 413.40(e)(1) in June 1995. *See* 60 Fed. Reg. 29202, 29245 (June 2, 1995) ("We propose to revise § 413.40(e)(1) to clarify that a request for a payment adjustment must be received by a hospital's fiscal intermediary no later than 180 days from the date on the [NPR]."). The preamble to the proposed rule regarding the amendment noted that the regulation then in effect used the word "made" rather than "received," but stated that CMS had "consistently interpreted the word 'made' to mean 'received by the fiscal intermediary' since the original rule was promulgated" in 1982. *Id.* The proposed rule preamble further explained that the clarification was needed to avoid misinterpretations by hospitals and intermediaries. *Id.*[7]

---

[7]In full, the proposed rule preamble stated:

> We propose to revise § 413.40(e)(1) to clarify that a request for a payment adjustment must be received by a hospital's fiscal intermediary no later than 180 days from the date on the notice of amount of program reimbursement (NPR). As currently worded, this section states that a request must be "made" rather than "received." We have consistently interpreted the word "made" to mean "received by the fiscal intermediary" since the original regulation was promulgated (47 FR 43282, September 30, 1982). However, use of the word "made" in § 413.40(e)(1) has resulted in varying interpretations of the timely filing requirement by hospitals and their fiscal intermediaries. In the interest of a uniform and consistent application of our policy, we are proposing to clarify the regulation by substituting "received by the hospital's fiscal intermediary" for "made" in § 413.40(e)(1).

60 Fed. Reg. 29202, 29245 (June 2, 1995).

-5-

After the clarifying amendment was passed, CMS issued notice that the final rule had been adopted, and it again reiterated that the change in wording in § 413.40(e)(1) from "made" to "received by" was to clarify CMS's consistent interpretation that requests for adjustment had to be received by the hospital's intermediary no later than 180 days from the date of the NPR. 60 Fed. Reg. 45778, 45840 (Sept. 1, 1995). The final rule preamble stated:

> We proposed to revise § 413.40(e)(1) to clarify that a request for a payment adjustment must be received by a hospital's fiscal intermediary no later than 180 days from the date of the notice of program reimbursement (NPR). Currently, this section states that a request must be "made" rather than "received." We have consistently interpreted the word "made" to mean "received by the fiscal intermediary" since the original regulation was promulgated (47 FR 43282, September 30, 1982). However, use of the word "made" in § 413.40(e)(1) has resulted in varying interpretations of the timely filing requirement by hospitals and their fiscal intermediaries. In the interest of a uniform and consistent application of our policy, we proposed to clarify the regulation by substituting "received by the hospital's fiscal intermediary" for "made" in § 413.40(e)(1).

60 Fed. Reg. 45778, 45840 (Sept. 1, 1995).

> Thus, effective October 1, 1995, 42 C.F.R. § 413.40(e)(1) was amended to read:

> A hospital may request an adjustment to the rate-of-increase ceiling imposed under this section. The hospital's request *must be received by* the hospital's fiscal intermediary no later than 180 days after the date on the intermediary's initial notice of amount of program reimbursement (NPR) for the cost reporting period for which the hospital requests an adjustment.

42 C.F.R. § 413.40(e)(1) (emphasis added); *see also* 60 Fed. Reg. at 45,840 (Sept. 1, 1995) ("Effective Date: This final rule is effective on October 1, 1995").

Therefore, no later than October 1, 1995—more than two years before Saint Marys mailed its request for adjustment—the clarified language of § 413.40(e)(1) was in effect and unambiguously required that the reimbursement adjustment request be "received by" the intermediary no later than 180 days after the date of the NPR. *Id.* Accordingly, under the operative version of § 413.40(e)(1), Saint Marys's adjustment request was clearly untimely.

But even if the 1994 version of § 413.40(e)(1) applied, Saint Marys's adjustment request was still untimely. "'The plain meaning of a statue controls, if there is one, regardless of an agency's interpretation.'" *Horras v. Leavitt*, 495 F.3d 894, 900 (8th Cir. 2007) (quoting *Hennepin County Med. Ctr. v. Shalala*, 81 F.3d 743, 748 (8th Cir. 1996)). "If there is ambiguity in a statute that an agency has been entrusted to administer, however, the agency's interpretation is controlling when embodied in a regulation, unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Horras*, 495 F.3d at 900 (quoting *Hennepin County Med. Ctr.*, 81 F.3d at 748 (in turn quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984))); *see also In re Old Fashioned* Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001) ("Although substantial deference is due an agency's interpretation of its regulations, no deference is due if the interpretation is contrary to the regulation's plain meaning."). We also accord deference "when an agency has developed its interpretation contemporaneously with the regulation, when the agency has consistently applied the regulation over time, and when the agency's interpretation is the result of thorough and reasoned consideration." *Advanta USA, Inc. v. Chao*, 350 F.3d 726, 728 (8th Cir. 2003) (quoting *Sioux Valley Hosp. v. Bowen*, 792 F.2d 715, 719 (8th Cir. 1986)).

Here, the proposed rule preamble, 60 Fed. Reg. at 29245, and the final rule preamble, 60 Fed. Reg. at 45840, both expressly state that CMS had "consistently interpreted the word 'made' to mean 'received by the fiscal intermediary' since the original regulation was promulgated [in 1982]." Saint Marys provided no evidence that CMS has ever taken a position inconsistent with this "received by" interpretation. Thus, deference must be given to CMS's interpretation of its own regulations, *Advanta USA*, 350 F.3d at 728. Further, the agency's interpretation is controlling because it is not arbitrary, capricious, or contradictory to the plain meaning of the regulation. *Horras*, 495 F.3d at 900; *In re Old Fashioned Enters., Inc.*, 236 F.3d at 425.

While Saint Marys's asserted interpretation of the 1994 version of § 413.40(e)(1) is plausible, that interpretation is not compelled by the plain wording of the statute nor by other indications of the agency's intent at the time of the regulation's promulgation. Further, although Saint Marys contends that the agency has interpreted "made" in other regulations to mean the date of mailing, it has provided no evidence that CMS ever interpreted "made" in the previous version of § 413.40(e)(1) to mean anything other than "received by." Additionally, Saint Marys's argument that the proposed and final rule preambles demonstrate that CMS has inconsistently interpreted "made" misreads those preambles, as they both state that the "use of the word 'made' in § 413.40(e)(1) . . . resulted in varying interpretations of the timely filing requirement *by hospitals and their fiscal intermediaries*." *See* 60 Fed. Reg. at 29245; 60 Fed. Reg. at 45840 (emphasis added). CMS is not a hospital or fiscal intermediary.

Contrary to Saint Marys's position, the preambles explain that CMS has "consistently interpreted the word 'made' to mean 'received by the fiscal intermediary,'" but because of the misinterpretations by hospitals and intermediaries the regulation's wording was changed, "[i]n the interest of a uniform and consistent application." *Id.* Accordingly, under either version of the regulation, the rule has been

consistently applied to require a TEFRA adjustment request to be received by the intermediary no later than 180 days from the date of the NPR.

Saint Marys also argues that it detrimentally relied on § 3004.2 of the Medicare Provider Reimbursement Manual (PRM). As noted above, the PRM states that the adjustment request must be "submitted" by the hospital no later than 180 days after the date of the NPR. Although the PRM does not define "submitted" or "submit," Saint Marys asserts that "submitted" means "mailed by" rather than "received by" the 180 day deadline.

"To help providers like [Saint Marys], the Secretary issues a Provider Reimbursement Manual [(PRM)]. 'The PRM is an extensive set of informal interpretative guidelines and policies published to assist intermediaries and providers.'" *Horras*, 495 F.3d at 900 (quoting *Providence Hosp. of Toppenish v. Shalala*, 52 F.3d 213, 218 (9th Cir. 1995)). The interpretive rules in the PRM are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99 (1995) (quotations and citation omitted). However, the PRM's "[i]nterpretive rules do not require notice and comment, . . . do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Id.* "[T]his court has indicated that an agency's interpretation which is not subjected 'to the rigors of notice and comment' is not entitled to substantial deference." *In re Old Fashioned Enters., Inc.*, 236 F.3d at 425 (quoting *King v. Morrison*, 231 F.3d 1094, 1096 (8th Cir. 2000) (refusing to defer to agency program statement)).

Because the PRM "does not have the force and effect of law and [is] not accorded that weight in the adjudicatory process," *Guernsey Memorial Hosp.*, 514 U.S. at 99, Saint Marys's arguments based on its alleged reliance on the PRM must fail. The PRM did not state that an adjustment request must be mailed within the 180-day period, as Saint Marys claims; it stated that the request must be "submitted"

within 180 days, and "submitted" was not defined by the PRM. Although it would have been helpful if the Secretary had clarified the PRM when it clarified § 413.40(e)(1), "[t]he PRM, while a useful guide to interpreting the Medicare statute and regulations, is not strictly binding on the Secretary." *Baptist Health v. Thompson*, 458 F.3d 768, 778 n.9 (8th Cir. 2006) (quoting *Paragon Health Network, Inc. v. Thompson*, 251 F.3d 1141, 1147 (7th Cir. 2001)). Further, Saint Marys's alleged reliance on the PRM was not reasonable in light of the Secretary's clarifying change to § 413.40(e)(1) which became effective in 1995—two years prior to Saint Marys's request. *See id.* (finding hospital's reliance on PRM was not reasonable in light of earlier direct communication from DHHS contradicting PRM).

In sum, regardless of the 42 C.F.R. § 413.40(e)(1) version applied, Saint Marys's appeal fails. The Secretary's interpretation of its regulations is controlling as its interpretation was not contradictory to the plain meaning of the regulation, nor was its decision arbitrary, capricious, or an abuse of discretion.

### III. *Conclusion*

Accordingly, the district court's judgment is affirmed.

_____